UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:23-cr-00274-RWS-JSD-1 |
| ) | |
| MACE ANTHONY NOSOVITCH, ) | |
| Defendant. ) | |

**DEFENDANT'S POST-HEARING MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**
**(JAIL CALLS, ETC.)**

The Court has granted leave to file post-hearing memoranda regarding Defendant Nosovitch's motion to suppress evidence of jail calls and text messages (or "chirps) obtained by the Government prior to the handing up the superseding indictment herein.  In the interest of economizing the Court's time by avoiding undue repetition, Defendant's motion to suppress and supporting memorandum (ECF 67/68), alluded to Defendant's earlier motion to dismiss count I of the superseding indictment and the memorandum in support.  ECF 59/60.  Although the motion to dismiss was withdrawn when the Government secured dismissal of count I, Defendant by no means abandons his arguments regarding the facial insufficiency of count I as set forth in the memorandum in support of the motion to dismiss.  Similarly, in this post-hearing memorandum, the Defendant is endeavoring to be succinct, assuming that the Court will take notice of the previous memoranda, ECF 60 and 68.

## Facts[1]

Defendant Nosovitch was arrested pursuant to the original indictment in this cause on May 25, 2023, and remains in custody. The original indictment [ECF 2] charged defendant with violation of 18 U.S.C. §922(a)(6), alleging that Dr. Nosovitch:

> knowingly made a false and/or fictitious written statement to Sentinel Arms D/B/A The Range St. Louis West, which statement was intended and likely to deceive Sentinel Arms D/B/A The Range St. Louis West, as to a fact material to the lawfulness of such sale of the said firearm to Defendant under Chapter 44 of Title 18, United States Code, in that Defendant did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives form 4473, Firearms Transaction Record, to the effect that he was not subject to a court order restraining him from harassing, stalking, or threatening his intimate partner, when in fact, as Defendant then knew, he was subject to a court order restraining him from harassing, stalking, or threatening his intimate partner.

The ATF Form 4473 that Dr. Nosovitch signed contained the following question (Exhibit A, p. 2):

> [21] j. Are you subject to a court order, including a Military Protection Order issued by a military judge or magistrate, restraining you from harassing, stalking or threatening your child or intimate partner or child of such partner?

In answering the foregoing question, Dr. Nosovitch checked the box "No." Ex. A, p. 2. In signing the form, Dr. Nosovitch stated: "I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473." *Id.* The same form contained the following under the heading "NOTICES, INSTRUCTIONS, AND DEFINITIONS" (Ex. A, pp. 3-4, boldface in original):

---

[1]The motion to suppress jail calls and text messages was submitted after a hearing at which the only evidence proffered included the pleadings in this cause, the circuit court minutes in the state adult abuse proceeding, 21st Circuit No. 23SL-PN00528, and the Form 4473 that formed the basis of count I of the original indictment. It does not appear that the minutes and Form 4473 were previously filed as exhibits. To ensure a complete record, Defendant files Form 4473 as Exhibit A hereto and the circuit court minutes as Exhibit B hereto. Because the instant motion is a motion to suppress, there is no question that the Court can entertain these exhibits in this context. Further, as the argument herein demonstrates, the Court can, in this case, consider these undisputed matters outside the face of the indictment in deciding its facial insufficiency.

**Qualifying Restraining Orders:** Under 18 U.S.C. § 922, firearms may not be sold to or received by persons subject to a court order that: (A) was issued after a hearing which the person received actual notice of and had an opportunity to participate in; (B) restrains such person from harassing, stalking, or threatening an intimate partner or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury. An "intimate partner" of a person is: the spouse or former spouse of the person, the parent of a child of the person, or an individual who cohabitates or has cohabitated with the person.

In fact, at the time he completed the Form 4473, defendant was subject only to an *ex parte* order of protection, granted without notice or hearing. *See* Ex. B, minutes in St. Louis County Circuit Court No. 23SL-PN00528.

After his arrest, Dr. Nosovitch was Mirandized. During his sojourn in federal custody--at a county jail in Illinois, there is no dispute that a variety of materials or communications possessed or generated by defendant Nosovitch were seized by authorities prior to October 11, 2023,[2] including text messages and telephone recordings. At no time did defendant consent to such seizures, although the facilities he used while in custody apparently had notices indicating that the communications were not private and would be recorded by authorities. The text messages or "chirps" seized are found at pp. G240ff. of the discovery materials provided to defense counsel. The recordings of conversations are also identified in the discovery materials provided; the chirps and recordings were made between the date of Dr. Nosovitch's confinement on the original indictment, May 25, 2023, and October 10, 2023, the day before the superseding

---

[2] Defendant has not moved to dismiss count II of the superseding indictment. While reserving objections to count II of the superseding indictment, defendant's motion to suppress evidence obtained during his detention is at this time limited to evidence obtained prior to the handing up of the superseding indictment, *i.e.*, October 11, 2023, during which time only the charge alleged in the former count I was pending.

3

indictment was filed.  This motion is intended to secure suppression of any and all material seized on and between these dates.

## Argument

**I.    Defendant's arrest and continued detention prior to October 11, 2023, were unlawful, in violation of the Fourth and Fifth Amendments, because the original indictment charging a violation of 18 U.S.C. §922(a)(6) was facially insufficient to charge the offense, and any evidence garnered during that detention was unlawfully obtained and must be suppressed.**

Section 922(a)(6) of U.S. Code Title 18 provides in pertinent part that it is unlawful "for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a . . .  licensed dealer, . . . **knowingly to make any false or fictitious oral or written statement** or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter."  (Emphasis supplied.). The gist of Defendant's position regarding the invalidity of the indictment with regard to 18 U.S.C. §922(a)(6) is that the indictment fails entirely to allege that Dr. Nosovitch knew that he was in fact subject to a "qualifying restraining order" when he answered "no" to Question 21j on Form 4473, and that such an allegation was essential to allege an offense of knowingly making a false statement.

In the case at bar, the indictment simply regurgitates the text of Question 21j, without alleging that Dr. Nosovitch knew that he was subject to a qualifying restraining order *as defined in Form 4473 itself.*  This was a crucial fact that had to be alleged in order for the Government lawfully to charge Dr. Nosovitch with knowingly making a false statement.  Indeed, the pertinent

4

federal regulations governing Form 4473 are pellucid that the notices and definitions set forth in the form are integral to the questions and answers set forth.[3]

The Government insists that the indictment at issue is sufficient, alluding to the general proposition that an indictment in the words of the statute will usually suffice, and noting the allegation that Defendant falsely replied "no" to the question that did not set forth the elements of a qualifying order. The Government's view is misguided, as established by the Supreme Court itself in *Russell v. United States,* 369 U.S. 749, at 765 and 768 (1962) (citations in original, emphasis added):

> As has been pointed out, the very core of criminality under 2 U.S.C. § 192 is pertinency to the subject under inquiry of the questions which the defendant refused to answer. What the subject actually was, therefore, is central to every prosecution under the statute. **Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.**
>
> "It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, **'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars**." United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588. An indictment not framed to apprise the defendant 'with reasonable certainty, of the nature of the accusation against him * * * is defective, although it may follow the language of the statute.' United States v. Simmons, 96 U.S. 360, 362, 24 L.Ed. 819. 'In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; * * *.' United States v. Carll, 105 U.S. 611, 612, 26 L.Ed. 1135. **'Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.** * * *The vice of these indictments, rather, is that they failed to satisfy the

---

[3] 27 C.F.R. § 478.21, headed "Forms prescribed" provides (emphasis added):

> a. The Director is authorized to prescribe all forms required by this part. All of the information called for in each form shall be furnished **as indicated by the headings on the form and the instructions on or pertaining to the form.** In addition, information called for in each form shall be furnished as required by this part.

5

first essential criterion by which the sufficiency of an indictment is to be tested, i.e., that they failed to sufficiently apprise the defendant 'of what he must be prepared to meet.'

\* \* \*

It has long been recognized that there is an important corollary purpose to be served by the requirement that an indictment set out 'the specific offence, coming under the general description,' with which the defendant is charged. This purpose, as defined in United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588, **is 'to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had.'**

*Russell* was cited with approval in *Hamling v. United States,* 418 U.S. 87 (1974), and its principles are consistent with current F.R.Crim.P. 7(c).

Since Defendant's guilt under 922(a)(6) in this case depended entirely on whether he knowingly provided a false answer to Question 21j, it was essential that the indictment allege[4] that he knew he was subject to a *qualifying* restraining order, not some generic order restraining him from harassing an intimate partner.  In other words, the indictment necessarily had to allege that Defendant knowingly answered falsely to Question 21j as explained by the notices, instructions, and definitions of the form itself.  Because the circuit court minutes conclusively reflect that no such qualifying order had been entered when Dr. Nosovitch completed Form 4473, the Government could not have alleged such a knowing falsehood.  The failure to allege the existence of a qualifying order renders the indictment a nullity.

---

[4] Whether applying the standard governing a motion to dismiss the indictment, or the standard governing motions to suppress, this Court is not prohibited from considering the undisputed facts of the text of Form 4473 and the status of the state court order in determining the insufficiency of the indictment.  See *United States v. Church,* 461 F.Supp.3d 865 (S.D.Iowa 2020); *United States v. Marrowbone,* 102 F. Supp. 3d 1101 (D.S.D. 2015).  While the Government insists that it objects to any facts outside the indictment, it is fatuous to argue that this Court cannot consider Form 4473, which is explicitly referenced in the indictment, nor take judicial notice of the state court minutes.

6

Albeit not directly in point, *United States v. Davies,* 942 F.3d 871 (8th Cir. 2019), affords guidance. That case involved an appeal of a conviction under 18 U.S.C. §922(g)(1) ("felon in possession"), but the issue was whether the Government had proved that the defendant knew he had been convicted of a felony under Iowa law at the time of possession of the firearm, as required by *Rehaif v. United States*, 588 U.S. 225 (2019). The Eighth Circuit reversed the conviction and remanded for a new trial due to the fact that Iowa law was not so clear that the defendant necessarily knew that he had in fact been convicted of a felony at the relevant time. The situation in Dr. Nosovitch's case is plainer than that in *Davies*: Dr. Nosovitch could not have known that his answer to Question 21j was false, because there was no qualifying restraining order (as defined by Form 4473 itself) in force at the time. Cf. *Dixon v. United States,* 548 U.S. 1 (2006).

Some guidance is also provided by *United States v. Sholley-Gonzalez,* 996 F.3d 887 (8th Cir. 2021), albeit counsel misquoted the opinion at the motion hearing. *Sholley-Gonzalez* involved an attack on an indictment that charged one count of violation of §922(g)(8) and two counts of violation of §922(a)(6). Although the defendant attacked the indictment in its entirety, contending that it failed adequately to allege that the state court order expressly designated the complaining party as an "intimate partner," the Eighth Circuit quoted only the indictment as to §922(g)(8), holding that nothing in that section required that a qualifying order specifically designate the complainant as an "intimate partner." In so holding the Court rejected the attack on all counts of the indictment, given that the state court order in fact conformed to the criteria of §922(g)(8). Because the indictment adequately pleaded the elements of §922(g)(8) in at least one count, the defendant's attack on the indictment as a whole failed. Nevertheless, the reasoning of the Court of Appeals certainly implies that the defendant could not have been charged under

7

§922(a)(6) if the restraining order did not comply with the criteria of §922(g)(8). (Judge Loken's dissent in *Sholley* intimates as much.)

2.  **Because the indictment under §922(a)(6) is fatally defective, the arrest and detention of Dr. Nosovitch prior to the superseding indictment were unlawful.**

In *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017), the Supreme Court expounded:

> . . . pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case. The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. . . . That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. **But it also can occur when legal process itself goes wrong**—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification. Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. And for that reason, it cannot extinguish the detainee's Fourth Amendment claim . . . . If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment. [Emphasis added.]

By a parity of reasoning, a detention as the result of a facially invalid indictment is equivalent to any unfounded judicial determination of probable cause--for, as is well established, a grand jury indictment is a determination of probable cause. If the finding of probable cause by the indictment is invalid--as here, where the original indictment does not and cannot allege essential elements of the offense--then the pretrial detention of the defendant is invalid. *See Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546 (4th Cir. 2017) (legal process instituted against arrestee, and his resulting pretrial detention, were unsupported by probable cause; continued pretrial detention based on false affidavit contravened Fourth Amendment); cf. *Ex parte United States*, 287 U.S. 241, 250 (1932) ("the finding of an indictment, **fair upon its face**, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer")(emphasis added). While a defective

8

finding of probable cause need not void a subsequent conviction after trial, *see Gerstein v. Pugh*, 420 U.S. 103, 119 (1975), a defective indictment, omitting essential elements of the offense, certainly precludes proceeding to trial, and, *a fortiori,* precludes arrest and detention of the defendant. If the defendant's detention is unlawful, it follows that evidence obtained as a result of that illegal detention must be suppressed.

Finally, defendant observes that the Fifth Amendment guarantees that, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . ." It follows that holding a defendant to answer for a felony without a valid indictment is as much a violation of the Fifth Amendment as it is of the Fourth Amendment. As was stated in *United States v. Gayle*, 967 F.2d 483, at 485 (11th Cir. 1992) (*en banc*):

> A criminal conviction will not be upheld if the indictment upon which it is based does not set forth the essential elements of the offense. . . . This rule serves two purposes. First, it informs the defendant of the nature and cause of the accusation as required by the Sixth Amendment of the Constitution. Second, it fulfills the Fifth Amendment's indictment requirement, ensuring that a grand jury only return an indictment when it finds probable cause to support all the necessary elements of the crime.

In this case, the failure of the original indictment to allege all essential elements of the offense denied defendant his Fifth Amendment right, as well as his Fourth Amendment rights, and necessitates exclusion of any evidence obtained as a result. Cf. *Wong Sun v. United States*, 371 U.S. 471 (1963).

**2.     The taint of Dr. Nosovitch's illegal detention was not purged by the giving of *Miranda* warnings or by subsequent independent, intervening circumstances, because the recording of jail calls and text messages--notwithstanding their alleged incriminating content--was the direct result of the primary illegality.**

9

It is elementary that statements and evidence acquired as the result of an illegal arrest are to be excluded from the evidence, unless intervening circumstances show that the taint of illegality is sufficiently attenuated as to render it immaterial.  See *Utah v. Strieff,* 579 U.S. 232, 136 S.Ct. 2056 (2016); *Kaupp v. Texas,* 538 U.S. 626 (2003); *Taylor v. Alabama,* 457 U.S. 687 (1982)(arrest warrant not "intervening circumstance"); see generally 3 W. LaFave, et al., *Criminal Procedure* §9.4(a) (4th ed.).  The burden is on the Government to demonstrate that otherwise illegally seized evidence is "purged" of its primary taint.  *See, e.g.*, 3 LaFave, §10.3(b).

In *Utah v. Strieff,* the Supreme Court identified three attenuation factors:  (1) temporal proximity between the initial unlawful seizure and the search, (2) intervening circumstances that support the continued detention, and (3) flagrancy or purpose of police misconduct.  136 S.Ct. 2062-63.

In this case, it is difficult to see how the taint has been purged.  The factor of temporal proximity in one sense favors the Government, as the seizure of the recordings came well after the Defendant's arrest; in another sense, the seizure was the direct product of the continued detention, so that there was in practical effect no space of time between the detention and the seizure.

Nor are there intervening circumstances that dispel the taint.  Although it may be argued--as does the Government in reliance on *United States v. Hester,* No. S1 19-cr-324 (NSR) (S.D. N.Y. Jun 26, 2020)----that the giving of Miranda warnings, the jail warnings regarding the recording of telephone calls or messages, and the lapse of time between the Defendant's arrest and the seizure of the recordings are all intervening circumstances, these circumstances are not truly intervening, independent circumstances entirely unconnected with the illegal detention. Importantly, as demonstrated by the psychiatric reports filed concerning Dr. Nosovitch's mental

10

state, it is also clear that he was unable to understand any warning and waiver protocol or to knowingly waive constitutional rights. Notably, the examiners concluded that he could not have comprehended Question 21j on the Form 4473; so it is difficult to see how he could have understood and knowingly waived his constitutional rights, such that the Miranda warnings amount to an intervening circumstance.[5]  *See* ECF 136, pp. 18, 25; ECF 136-1, pp. 11, 20; ECF 136-2, p. 4.  As noted, without the continued detention, there simply would have been no opportunity to seize any evidence.  The evidence harvested during Dr. Nosovitch's incarceration was the direct exploitation of the primary illegality.  Nothing occurred to interrupt that detention or put it on a new course until the superseding indictment was handed up.

While the defense does not accuse the Government of deliberately seeking to violate constitutional rights in this case, nevertheless the misconduct was flagrant in a literal sense.  The Government procured a facially insufficient indictment and used it to achieve a prolonged illegal detention of the Defendant.  Without that detention, no further evidence of wrongdoing would have been generated.  This kind of official conduct, no less than corrupt or deliberate flouting of the Constitution, is surely much in need of deterrence.  It is not too much to ask that the Government ensure that an indictment is facially sufficient before depriving a citizen of his liberty.

Although the Eighth Circuit has held that the commission of a new and distinct crime during an unlawful detention does not implicate the exclusionary rule under either the Fourth or the Fifth Amendments, *United States v. Hunt,* 372 F.3d 1010, 1012 (8th Cir. 2004), that flat statement is not the end of the issue here.  The allegations of count II of the superseding indictment in this case are inextricably intertwined with the Defendant's prolonged illegal

---

[5] Likewise, no record evidence indicates that Dr. Nosovitch saw, read, learned of, or understood any jail warnings.

11

detention, and, more importantly, with the restraining order that he was charged with lying about. The essence of count II is an alleged effort to procure the murder of the same intimate partner who was the subject of the restraining order. Count II does not involve an effort to bribe an officer (as in *Hunt*), to assault an officer or witness involved in the detention, or to commit any other offense directly related to the detention.

It cannot be denied that enforcement of the exclusionary rule in this context carries a substantial cost (assuming the truth of the allegations of count II, which the Defendant categorically denies). However, no other remedy will suffice to deter the Government's conduct here or vindicate Dr. Nosovitch's Fourth Amendment rights. The criteria for attenuation as announced in *Utah v. Strieff*, supra, cannot be established. There was no break in custody; the Government's conduct in securing a manifestly insufficient indictment was flagrant in the legal sense; and the jail recordings and messages could not have been obtained but for the unlawful detention. In sum, the only appropriate remedy to deter prolonged custody on facially invalid charges is to suppress any evidence derived from that illegal custody.

## Conclusion

Because defendant Nosovitch's continued detention pursuant to the facially insufficient original indictment was contrary to the Fourth and Fifth Amendments, all evidence obtained during his detention from May 25, 2023, through October 10, 2023, must be suppressed as the product of his illegal arrest and detention, and of denial of his right to a proper presentment by a grand jury.

Respectfully submitted,

*/s/ Adam Fein*

and

*/s/ Robert H. Dierker*

Adam Fein, #52255(MO)
Robert H. Dierker #23671(MO)
Attorneys for Defendant
120 S. Central Avenue, #130
Clayton, MO 63105
(314) 862-4332
afein@rsfjlaw.com
robertdierker@sbcglobal.net

## CERTIFICATE OF SERVICE

    I certify that on July 11, 2025, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel for the Government.
.

13