UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S1 4:23CR00274 JMD/JSD |
| | ) | |
| MACE NOSOVITCH, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
POST-HEARING MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE (JAIL CALLS, TEXT, ETC.)**

COMES NOW the United States of America, by and through Thomas C. Albus, United States Attorney for the Eastern District of Missouri, and Catherine M. Hoag, Assistant United States Attorney for said District, and for its Response to Defendant's Post-Hearing Memorandum in Support of Motion to Suppress Evidence (Jail Calls, Texts, Etc.), states as follows:

**INTRODUCTION**

On May 24, 2023, an Eastern District of Missouri grand jury returned an indictment charging the defendant with one count of making a false statement in connection with a firearms transaction, in violation of Title 18, United States Code, Section 922(a)(6). R. Doc. 2. On May 25, 2023, the defendant appeared before Magistrate Judge Noelle Collins for his initial appearance, arraignment, and detention hearing. R. Doc. 7. Magistrate Judge Noelle Collins ordered the defendant detained on June 8, 2023. R. Doc. 19.

While in custody on the charge of making a false statement, the defendant attempted to hire a fellow inmate to kill the defendant's wife after the inmate was released from custody. On October 11, 2023, a federal grand jury returned a Superseding Indictment adding Count Two -

1

Attempted Murder for Hire. R. Doc. 38. The charging language for Count One did not change from the original Indictment.

Prior to the return of the Superseding Indictment, the defendant filed a motion to revoke the detention order, wherein he put forth many of the arguments contained within the Post-Hearing Memorandum, with the glaring exception of the arguments regarding the facial deficiency of the Indictment. R. Doc. 33. It was not until March 25, 2024, when the defendant filed his pretrial motions, including the Motion to Dismiss the Indictment (R. Doc. 59) and Motion to Suppress Evidence (Jail Calls, Texts, Etc.) (R. Doc. 67), that he raised the argument the Indictment was facially insufficient. On August 27, 2024, the Government filed its response to the defendant's Motion to Dismiss the Indictment and Motion to Suppress Evidence (Jail Calls, Texts, Etc.). R. Doc. 102. Following a competency evaluation, the Government moved to dismiss Count One of the Superseding Indictment, which was granted on May 12, 2025. (R. Docs. 144, 146). The defendant then withdrew his Motion to Dismiss Indictment (R. Doc. 147).[1] On June 10, 2025, the Court heard oral arguments on the Motion to Suppress Evidence (Jail Calls, Texts, Etc.) and the defendant submitted his Post-Hearing Memorandum on July 11, 2025. R. Docs. 152, 154. The Government now responds.

The Government objects to the Court considering any additional "facts" or exhibits contained in the defendant's Post-Hearing Memorandum. As explained, *infra*, the Court must evaluate the defendant's arguments regarding the facial sufficiency of the original Indictment

---

[1] Because the defendant withdrew his Motion to Dismiss Count One of the Indictment, any arguments made therein should not be considered by this Court. The defendant did not seek to supplement his Motion to Suppress Evidence following the dismissal of Count One and now seeks to incorporate arguments from a withdrawn motion.

based solely upon the four corners of the Indictment.[2]

## ARGUMENT

**I.      The defendant's statements are evidence of a separate and distinct crime and therefore admissible regardless of the legality of his detention.**

The defendant asserts that the recorded phone calls and text messages (chirps) made while he was detained, between May 25, 2023 and October 10, 2023 should be suppressed because he believes they were the product of an illegal detention by virtue of a defective indictment.[3] However, his arguments run directly contrary to binding Eighth Circuit precedent that has consistently held, even if a defendant is illegally arrested or detained, evidence pertaining to a new crime committed while so detained will not be suppressed. *See United States v. Hunt*, 372 F.3d 1010, 1012 (8th Cir. 2004); *United States v. Sledge*, 460 F.3d 963, 967 (8th Cir. 2006) ("even assuming *arguendo* the detention and pat-down search…were invalid…[the defendant's flight from law enforcement] provided independent grounds for his arrest" and evidence located during

---

[2] The defendant now raises issues that were not raised prior to filing his Post-Hearing Memorandum, specifically regarding whether the defendant understood that his jail communications were monitored by law enforcement. The defendant cannot raise this issue after the hearing. However, should the Court believe the defendant is entitled to raise this issue 16 months after filing his motion to suppress evidence and deems such an argument is relevant to rule on the motion, the Government requests the opportunity to reopen the hearing and present evidence and argument regarding this issue. Regardless, the Government continues to object to the use of any evidence outside the four corners of the indictment to evaluate the defendant's primary claim that the Indictment is facially insufficient.

[3] The defendant has not specified exactly what he seeks to suppress in his motion to suppress evidence or his post-hearing memorandum, even after urging from this Court during the June 10, 2025, hearing. While he references "text messages or 'chirps'" and recordings of phone calls made between May 25, 2023 and October 10, 2023, and "provided in discovery," the defendant also states he seeks to suppress "any and all material seized on and between these dates." R. Doc. 154, pp. 3-4. In addition to text messages and recorded phone calls, the Government has provided discovery which includes the defendant's statements to other inmates and handwritten documents seized from his cell. It is unclear whether the defendant also seeks suppression of these items and on what basis. As such, the Government urges this Court to consider whether the defendant has complied with this Court's order that "any motion to suppress shall set forth, with particularity, the item(s) of evidence to which the motion is addressed…" R. Doc. 16, p. 3.

arrest would not be suppressed). The Eighth Circuit's precedent is consistent with the purpose of the exclusionary rule. The exclusionary rule is a judicial remedy created to "deter wrongful police conduct." *United States v. Houck*, 888 F.3d 957, 959–60 (8th Cir. 2018) (quoting *Herring v. United States*, 555 U.S. 135, 137 (2009)). If a defendant commits a new and distinct crime, after alleged police misconduct, there is no wrongful conduct to deter, and as such, suppression of evidence would not be a proper remedy, but rather a windfall to the defendant.

In *Hunt*, during a traffic stop, officers located 25 pounds of cocaine inside Hunt's vehicle. 372 F.3d. at 1012. After his arrest, a DEA Task Force Officer introduced himself and asked if Hunt would be willing to cooperate. *Id.* Hunt responded by attempting to bribe the officer, asking the officer, "How much money would it take for you to keep the dope and for us to go home." *Id.* The district court determined the cocaine was seized following an illegal search, after which, the Government dismissed the drug charges and proceeded to trial on an obstruction of justice charge for the attempt to bribe the officer. *Id.*

On appeal, Hunt argued that his statement to the officer should have been suppressed because it was the product of an illegal arrest and detention, in violation of his Fourth and Fifth Amendment rights. *Id.* at 1012. The Eighth Circuit summarily rejected this argument, holding "[w]hen a defendant commits a new and distinct crime during an unlawful detention, the Fourth Amendment's exclusionary rule does not bar evidence of the new crime." *Id.*

The Eighth Circuit's holding is not unique. The Fifth Circuit, in *United States v. Garcia-Jordan*, held "[a] person who is stopped or detained illegally is not immunized from prosecution for crimes committed during his detention period." 860 F.2d 159, 160 (5th Cir. 1988). In *United States v. Bailey*, the Eleventh Circuit held "notwithstanding a strong causal connection in fact between lawless police conduct and a defendant's response, if the defendant's response is itself a

4

new, distinct crime, then the police constitutionally may arrest the defendant for that crime." 691 F.2d 1009, 1016–17 (11th Cir. 1982). The Eleventh Circuit explained that suppressing evidence of a new crime committed after an improper arrest or detention would essentially give a defendant "an intolerable carte blanche to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct[]" and concluded such a result "is too far reaching and too high a price for society to pay in order to deter police misconduct." 691 F.2d at 1017. The Fourth Circuit came to a similar conclusion in *United States v. Sprinkle*, stating when a defendant commits "a new and distinct crime, even if triggered by an illegal stop, [it constitutes] a sufficient intervening event to provide independent grounds for arrest" and "evidence seized in a search incident to that lawful arrest is admissible." 106 F.3d 613, 619 (4th Cir. 1997). *See also United States v. Castillo*, 238 F.3d 424 (6th Cir. 2000) (unpublished opinion) (holding the commission of a new crime following an allegedly improper detention "constituted an intervening act that purged the taint of his detention."); *United States v. Mitchell*, 812 F.2d 1250, 1253 (9th Cir. 1987) ("A person who is detained illegally is not immunized from prosecution for crimes committed during his detention.").

Here, the defendant was detained after being charged by a federal grand jury with making a false statement when attempting to obtain a firearm. While in custody on that charge, the defendant attempted to solicit other individuals to murder his wife in exchange for money. While the Government maintains that the original Indictment was legally sufficient, even if this Court were to find the Indictment was facially insufficient, the defendant cannot, nor should not, be immunized from his new and distinct crime of attempting to hire someone to murder his wife.

Although the defendant acknowledges *Hunt*, he attempts to distinguish it, claiming Count Two of the Superseding Indictment is "inextricably intertwined with the Defendant's prolonged

illegal detention… and… with the restraining order that he was charged with lying about." R. Doc. 154, pp.11-12. It appears the defendant is arguing that attempting to commit a murder-for-hire is not a "new and distinct" offense, simply because he was attempting to hire someone to kill his wife, who was the subject of the order of protection he was charged with lying about on Form 4473. However, the defendant's argument misses the mark, as the relevant inquiry is not whether the two crimes are wholly unrelated to each other, but whether the second offense is in fact a new offense, and not merely a continuation of the same criminal conduct that precipitated the illegal arrest or detention. *See Sprinkle*, 106 F.3d at 619 (holding when the defendant "drew and fired his gun at the officer, he committed a new crime that was distinct from any crime he might have been suspected of at the time of the initial stop."). Clearly, attempting to hire someone to kill his wife is not a continuation of the defendant's conduct of lying on a form to obtain a firearm. The fact that the would-be victim in the new criminal conduct is the subject of the order of protection does not "inextricably link" the two acts. It makes them related, but no more related than the attempt to bribe the officer in *Hunt* to forget about the illegally seized narcotics in the defendant's vehicle.

While the defendant has framed his arguments as a motion to suppress evidence obtained because of an illegal detention, "what [he] seeks in reality is immunity from prosecution for his crime" of attempting to hire someone to kill his wife. *Mitchell*, 812 F.2d at 1253. The evidence he seeks to suppress is not "merely evidence of a previously committed crime" that was the product of an allegedly illegal detention, but instead is evidence of an entirely new crime. As the Ninth Circuit explained in *Mitchell*:

> Committing a crime is far different from making an inculpatory statement, and the treatment we afford the two events differs accordingly. An inculpatory statement usually relates to a previously committed illegal act; there is nothing unlawful about the statement itself. A crime, on the other hand, whether committed by word or deed is by definition an act that violates the law. We exclude inculpatory evidence when it is obtained as a

6

result of an unlawful search or seizure. We have never, however, applied the exclusionary rule as a bar to the prosecution of a crime.

*Mitchell,* 812 F.2d at 1253.

The result the defendant seeks would result in an untenable outcome in which people would have "carte blanche" to commit new crimes while detained and simply argue any evidence regarding those new crimes must be suppressed because their initial arrest and/or detention was improper.  The defendant is seeking a remedy (suppression of evidence) based upon a claim that the indictment is insufficient as a matter of law. The remedy he seeks has been summarily rejected by the Eighth Circuit and other Circuits, as outlined above. Here, the defendant's detention was not illegal, and even if it was, the defendant's recorded calls, text messages, and any other evidence gathered during the murder-for-hire investigation between May 25, 2023, and October 10, 2023, are not subject to suppress because they are evidence of a new crime. As such, the defendant's motion to suppress should be denied.

## II.    The defendant's detention was based on a legally sufficient Indictment.

In his motion to suppress evidence, the defendant alleges that, as a matter of law, Count One of the original (and Superseding) Indictment failed to allege the essential elements of Section 922(a)(6). He then makes the illogical leap that because of this alleged failure, the Court is required, as matter of law, to suppress evidence seized while the defendant was detained on Count One of the original Indictment. The Government maintains the defendant's attempts to hire someone to kill his wife was a new, distinct crime and any complaint about the illegality for his initial detention is irrelevant. However, even if his actions were not a new crime, Count One of the original (and Superseding) Indictment was sufficient as a matter of law; therefore, the defendant's pretrial detention was lawful and cannot serve as a basis to suppress "any and all material seized" while the defendant was detained between May 25, 2023 and October 11, 2023.

**A.** **Count One of the original (and Superseding) Indictment was sufficient as a matter of law.**

In his Motion to Suppress Evidence, the defendant argues Count One of the Indictment "does not and cannot plead the essential allegations that the order of protection to which defendant was subject at the time was a *qualifying* order." R. Doc. 68, p. 6 (emphasis added). In his Post-Hearing Memorandum, the defendant shifts his argument, stating "the gist of the Defendant's position…is that the indictment fails entirely to allege that [the defendant] *knew* that he was in fact subject to a "*qualifying* restraining order…" R. Doc. 154, p. 5 (emphasis added). However, both arguments fail.

An indictment is sufficient if: (1) it contains all the essential elements of the offense charged; (2) it fairly informs the defendant of the charges against which he must defend; and (3) it alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. *United States v. Fleming,* 8 F.3d 1264, 1265 (8th Cir. 1993). "An indictment is normally sufficient if its language tracks the statutory language." *United States v. Sewell,* 513 F.3d 820, 821 (8th Cir. 2008). An indictment is only insufficient if it is "so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *Fleming,* 8 F.3d at 1265.

Title 18, United States Code, Section 922(a)(6) states:

> It shall be unlawful [] for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement [], intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale.

The statute does not require the Government to plead the "elements" the defendant alleges are required. The Government need only plead the defendant made a false statement, that he knew it

was false, and that the statement was intended or likely to deceive the seller of the firearm with respect to a material fact to the legality of the sale. *See United States v. Karani*, 984 F.3d 163, 171, fn.14 (1st Cir. 2021) ("To prove a violation of § 922(a)(6), the government needed to prove that an oral or written statement was made knowingly, was false, and was material to the lawfulness of a federal firearms sale"); *United States v. Brown*, 82 F.3d 411 (4th Cir. 1996) ("To sustain a conviction for making a false statement to a federally licensed firearms dealer in connection with the purchase of a firearm, the Government had to prove that Brown knowingly made a false statement to a licensed firearms dealer, that the false statement was made in the acquisition of a firearm, and that the false statement was likely to deceive the firearms dealer"); *United States v. Harrelson*, 705 F.2d 733, 736 (5th Cir. 1983) ("To establish a violation of § 922(a)(6), the government must show that the defendant knowingly made a false statement which was intended to deceive or likely to deceive the firearms dealer"); *United States v. Morales*, 687 F.3d 697, 700 (6th Cir. 2012) (citing *United States v. Harvey*, 653 F.3d 388, 393 (6th Cir. 2011) ("To sustain a conviction under Section 922(a)(6), the government must prove beyond a reasonable doubt that '(1) the defendant knowingly made (2) a false or fictitious oral or written statement that was (3) material to the lawfulness of the sale or disposition of a firearm, and was (4) intended to deceive or likely to deceive a firearms dealer'")); *United States v. Petitjean*, 883 F.2d 1341, 1345–46 (7th Cir. 1989) ("To sustain a conviction of violating § 922(a)(6), the government must prove that the defendant knowingly made a false statement to a licensed firearms dealer, that the false statement was made in acquisition of a firearm, and that the false statement was likely to deceive the firearm's dealer as to the lawfulness of the sale of a firearm."); *United States v. Meech*, No. 21-30025, 2022 WL 136823, at *1 (9th Cir. Jan. 14, 2022) (elements of Section 922(a)(6) charge are: (1) the seller was a licensed firearms dealer; (2) the defendant made a false statement in connection with

acquiring or attempting to acquire a firearm from the seller; (3) the defendant knew the statement was false; and (4) the false statement was material"); *United States v. Kaspereit*, 994 F.3d 1202, 1209 (10th Cir. 2021) (upholding jury instructions on elements of Section 922(a)(6) charge as follows: "FIRST: the Defendant made a false statement while obtaining a firearm from a licensed dealer; SECOND: the Defendant knew the statement was false; and THIRD: the statement was intended to or was likely to deceive the dealer about a material fact, i.e., a fact that would affect the legality of the transfer of the firearm from the dealer to the Defendant"); *United States v. Ortiz*, 318 F.3d 1030, 1036 (11th Cir. 2003) ("To sustain a conviction under § 922(a)(6), the government must prove beyond a reasonable doubt that: (1) the defendant knowingly made; (2) a false or fictitious written statement in connection with the purchase of firearms; (3) intended to deceive or likely to deceive a licensed firearms dealer; (4) and the false statement was a fact material to the lawfulness of the sale or disposition of the firearm"). The Government clearly pled these elements in the original (and Superseding) Indictment.

In this case, the original Indictment charging the defendant with violating Section 922(a)(6) clearly tracked the language of the statute. Count One read as follows:

> On or about May 14, 2023, in the County of Saint Louis, within the Eastern District of Missouri, MACE ANTHONY NOSOVITCH, the Defendant herein, in connection with the attempted acquisition of a firearm, a Sig Sauer make, P320 model, 9mm caliber pistol, bearing serial number 581496576, from Sentinel Arms D/B/A The Range St. Louis West, a licensed dealer of firearms within the meaning of Chapter 44 of Title 18, United States Code, knowingly made a false and/or fictitious written statement to Sentinel Arms D/B/A The Range St. Louis West, which statement was intended and likely to deceive Sentinel Arms D/B/ A The Range St. Louis West, as to a fact material to the lawfulness of such sale of the said firearm to Defendant under Chapter 44 of Title 18, United States Code, in that Defendant did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives form 4473, Firearms Transaction Record, to the effect that he was not subject to a court order restraining him from harassing, stalking, or threatening his intimate partner, when in fact, as Defendant then knew, he was subject to a court order

restraining him from harassing, stalking, or threatening his intimate partner.

R. Doc. 1.

This is exactly the language approved of by the Tenth Circuit in *Kaspereit*:

> The indictment [] charged that Defendant made a false and fictitious written statement to the Academy store in question (a licensed dealer), in connection with the acquisition of firearms, which statement he intended and was likely to deceive the store as to a material fact. In particular, he falsely represented and certified, on an ATF Form 4473 (Firearms Transaction Record), that he was not subject to a court order restraining him from harassing, stalking, and threatening an intimate partner and child of such partner when he knew he was subject to such an order.

994 F.3d at 1209.

Each of the four required elements contained in the statutory text of Section 922(a)(6) were alleged in Count One of the original Indictment, including the defendant's knowledge. Thus, per the defendant's own argument, the only missing "essential" element is that the court order restraining him from harassing, stalking or threatening his intimate partner was a "qualifying" order. However, the law imposes no such requirement and the defendant cites no law supporting this position. Rather, multiple Circuits support the Government's position.

Citing *Russell v. United States*, the defendant highlights several passages wherein the Supreme Court instructs when a statute includes "generic terms" the government must include a "statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." R. Doc. 154 at 5 (quoting 369 U.S. 749, 765, 768 (1962)). This is exactly what the Government did in this case. Section 922(a)(6) generally states that a person may not make a false or fictitious statement to a firearms dealer that is intended or likely to deceive that dealer with respect to a fact material to the sale of the firearm. There are myriad ways in which a person could violate Section 922(a)(6), which is why the Government "descended to the particulars" and included the allegedly false statement within the text of the

11

indictment, so that the defendant would clearly know what he must defend against. The Supreme Court stated an indictment is only defective if it is so generic that it fails to apprise the defendant of what he must meet at trial. Given the robust motion practice already undertaken in this matter, it can hardly be said that the defendant had no idea of how to defend against the charges contained in the Indictment.

The defendant also argues *United States v. Davies* provides "guidance" to the Court and supports his argument that Section 922(a)(6) requires the Government to plead in an indictment, that a defendant knew he was subject to a qualifying protection order. R. <u>Doc. 154 at 7</u>. However, *Davies* illustrates exactly why the defendant's argument fails. First, the Government did allege the defendant "knew, he was subject to a court order restraining him from harassing, stalking, or threatening his intimate partner." Second, the Eighth Circuit did not *dismiss* an indictment against Davies because the law was unclear as to whether the prior conviction qualified as a felony, rather it remanded the case for a new *trial* so the Government could prove (or fail to prove), at trial, whether the Defendant knew he was a convicted felon. <u>942 F.3d 871</u> (8th Cir. 2019).[4]

Count One of the original (and Superseding) Indictment alleged that the defendant knowingly made a false statement, in that he was not subject to a court order restraining him from harassing, stalking, or threatening his intimate partner. If proven, *at trial*, this would establish a violation of Section 922(a)(6). The Government is not required to plead every minute, specific detail of their case in the Indictment. Nor may the defendant reframe factually contested issues as

---

[4] Additionally, the defendant's attempt to include a *Rehaif* knowledge requirement has been explicitly rejected by at least one other court considering the exact issue. In *Kaspereit*, the Tenth Circuit held Section 922(a)(6) "does not establish a specific intent element," and that "a conviction under § 922(a)(6) only requires knowledge that the statement is false," not necessarily knowledge of membership in a particular class. <u>994 F.3d at 1208</u>.

statutorily required offense elements when they clearly are not. Because the Indictment contained all the essential elements of the offense charge, fairly informs the defendant of the charge against which he must defend, and alleges sufficient information to allow the defendant to avoid jeopardy concerns, the defendant was not, and has not been, wrongfully detained. The defendant's motion fails.

**B**.   **The defendant is not entitled to a pre-trial determination of the sufficiency of the Government's evidence.**

The defendant continuously frames his argument in terms of the Indictment being facially insufficient, and he repeatedly argues that the Government cannot prove the underlying order of protection was a "qualifying order of protection" pursuant to Section 922(g)(8). *See* R. Doc. 68, p. 2; R. Doc. 154, p. 6. To support this claim, the defendant attempts to submit exhibits to this Court, outside the four corners of the Indictment, specifically the circuit court minutes in the order of protection case and ATF Form 4473 executed by the defendant. R. Doc. #154.[5]

The defendant appears to be treating his motion to suppress evidence as a motion for judgment of acquittal. He claims, without support, these "facts" are not in dispute and therefore as a matter of law, the defendant was not subject to a "qualifying" protection order. However, the parties are not submitting post-*trial* briefing and a motion for summary judgment is not before this Court.[6]

---

[5] The defendant claims these exhibits were admitted at the time of hearing; however, the defendant did not admit these exhibits during the hearing and the Government objects to their admission.

[6] The defendant attempts to circumvent the law prohibiting this Court from considering evidence outside the four corners of the Indictment claiming he can do so because a motion to suppress evidence is before this Court. R. Doc. 154. However, the defendant's only argument for why evidence should be suppressed was the Indictment is facially insufficient. Thus, he cannot ask this Court to ignore the law regarding what it can and cannot consider when determining if an indictment is facially insufficient.

The defendant has attempted to sneak a motion to dismiss within a motion to suppress, claiming that the facts are undisputed (as to the legality of an underlying order of protection). As such, he wants to impose his fact-finding upon the Court and ultimately, upon the jury. Contrary to the defendant's assertions, the Government has not agreed that the operative facts are undisputed and has specifically objected to this Court's consideration of the facts put forth by the defendant. As such, the Court cannot consider the exhibits and "facts" proffered by the defendant. *See United States v. Hall*, 20 F.3d 1084, 1087-88 (10th Cir.1994) (holding courts may only entertain motions to dismiss that require it to consider facts outside the indictment in the "rare" and "limited circumstances" where "[1] the operative facts are undisputed **and** [2] the government fails to object to the district court's consideration of those undisputed facts," **and** [3] the district court can determine from them that, "*as a matter of law,* the government is incapable of proving its case beyond a reasonable doubt.") (emphasis added).

"An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Hall*, 20 F.3d at 1087. *See also United States v. Sampson*, 371 U.S. 75, 78–79 (1962) (holding that the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense). Here, the Government alleged in Count One that the defendant made a false statement in "that he was not subject to a court order restraining him from harassing, stalking, or threatening his intimate partner, when in fact, as Defendant then knew, he was subject to a court order restraining him from harassing, stalking, or threatening his intimate partner." Because the defendant is challenging the sufficiency of this Indictment, this Court must accept as true the Government's allegations that the defendant's

14

statement was false and that it was intended and likely to deceive the seller as to a material fact. *Hall*, 371 U.S. at 1087.

If Count One was still pending, the defendant would be free to contest at trial and on appeal, whether the order of protection fits the definitions contained within Form 4473 and therefore, whether the defendant made a knowing false statement on Form 4473. However, Count One has been dismissed and, even if it had not, at the current stage of the case, while defendant could attack the facial sufficiency of the Indictment, there is no procedural rule allowing him to assert, as a matter of law, that the facts do not support a finding of guilt for the offense charged. *See* Fed. R. Cr. P. 29.

Further, the defendant's continued reliance upon *Sholley-Gonzalez* is misplaced. The Eighth Circuit expressly refused to "go beyond the indictment and review the underlying protection order" because "when courts go beyond the face of the indictment, they are testing the sufficiency of the evidence, not whether the indictment stated an offense." 996 F.3d 887, 893 (8th Cir. 2021). That is exactly what the defendant is asking this court to do when it urges the court to consider the circuit court minutes and Form 4473.

Simply put, the defendant's motion amounts to nothing more than an impermissible pretrial challenge to the sufficiency of the Government's evidence. Challenging an indictment is not a means of testing the strength or weakness of the government's case, nor is a means of determining whether specific evidence should be suppressed. Here, the defendant's argument that the order of protection is not a qualifying order bears directly on the issues of the falsity and materiality of his later statement on the Form 4473, both of which would be issues for the jury to decide, if Count One was still pending. *See United States v. Ferro,* 252 F.3d 964, 968 (8th Cir. 2001) (holding "materiality is an issue for the jury" and pretrial determination of the sufficiency of the evidence

on the issue of materiality is inappropriate); *United States v. Brethauer*, <u>214 F. Supp. 820, 821</u> (W.D. Mo. 1963) ("The question of whether the particular alleged misrepresentation alleged in the indictment was or was not 'material' depends upon many factors that can be made apparent only by a full presentation of the entire factual situation" and cannot be resolved through a motion to dismiss). *See also United States v. Meech*, <u>487 F. Supp.3d 946, 953</u> (D. Mont. 2020) (defendant may "contend[] that he did not lie when he answered "no" to Question 11.h, because the protective order against him did not qualify as a "Restraining Order" as described by Question 11.h's instructions. At trial, the government bears the burden to prove him wrong.") (internal citations omitted). The defendant is not entitled to a pre-trial evaluation of the Government's evidence, and his motion should be denied for that reason.

## III.    Any alleged taint of an unlawful detention was purged by intervening circumstances.

While "[t]he exclusionary rule applies to statements that result from a Fourth Amendment violation, [] a statement is not "fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of police." *United States v. Yorgensen*, <u>845 F.3d 908, 913</u> (8th Cir. 2017) (*quoting Wong Sun v. United States*, <u>371 U.S. 471, 487</u>–88 (1963)). Instead, the appropriate "question is whether police obtained the statement 'by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Yorgensen*, <u>845 F.3</u>d. at 913, (internal quotations omitted). In determining whether statements are sufficiently attenuated from an illegal seizure, we consider the "temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct." *United States v. Brooks*, <u>22 F.4th 773, 780</u> (8th Cir. 2022) (quoting *Brown v. Illinois*, <u>422 U.S. 590, 603-04</u> (1975)) (internal citation omitted). However, "exclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of

16

obtaining evidence." *Hudson v. Michigan*, <u>547 U.S. 586, 592</u> (2006).

The defendant's entire argument in favor of suppression is premised upon an improper "but for" argument: if not for the Government obtaining an allegedly insufficient indictment, the defendant would not have been in custody and the Government would not have had the opportunity to investigate his attempt to have his wife murdered. Therefore, according to his argument, the evidence of the murder-for-hire plot should be suppressed because he committed this new, separate crime while incarcerated on a faulty indictment.

When evaluating the factors set forth by the Eighth Circuit in *Brooks*, suppression of the defendant's statements or other evidence gathered during the defendant's incarceration is clearly unwarranted. First, no temporal proximity between the alleged misconduct (the "insufficient indictment") and the statements exists. Several months passed between the defendant's arrest on the original Indictment and the statements he made while detained. Following the grand jury's probable cause finding, the Court issued a valid arrest warrant. The defendant was arrested on the warrant and ultimately ordered detained, after a contested detention hearing. The defendant has not cited a single case which supports his theory, nor does the Government believe such a case exists, that evidence of a crime committed by a defendant, subsequent to their "unlawful" detention, should be suppressed, because the subsequent crime was committed close-in-time to their pretrial detention. Such a result would be absurd and as previously discussed, Courts have consistently rejected such an argument.

Next, the defendant claims that "there are no intervening circumstances that dispel the taint" in this case, primarily due to each of the events being somewhat connected to his initial detention on the original Indictment. However, the proper inquiry is not whether the intervening event is entirely independent, but whether the intervening events attenuate or dissipate the initial

17

illegality. Here, there were several events that dissipated any alleged illegality in the arrest and detention of the defendant, such that his later statements attempting to facilitate the murder of his wife can no longer be the product of the initial illegality.

First and foremost, the defendant's statements while detained are entirely of his own volition and were not obtained as a result of a police interrogation[7] facilitated by an illegal arrest or detention. *See Rawlings v. Kentucky*, 448 U.S. 98, 106 (1980) ("[P]ersons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality."). The simple fact that the defendant was being held in a county jail when he made the statements is an insufficient reason to suppress the statements and falls far short of establishing that the Government "exploited" the defendant's detention to obtain the statements. It was entirely the defendant's choice to commit a new crime while incarcerated and to use jail communication devices to facilitate that crime.

Moreover, the defendant had appeared before a magistrate judge for his initial appearance, arraignment, and detention hearing, and had hired two different attorneys. These intervening events also serve to dissipate any allegedly illegality regarding his detention and weigh heavily against suppressing his voluntary statements while using the jail's communication devices. *See United States v. Hester*, 2020 WL 3483702 at *17 (finding intervening events when jail calls took places two days after his arrest, defendant had been *Mirandized* at that point, had been arraigned

---

[7] The defendant argues that any *Miranda* or jail warnings cannot serve as an intervening event because he (improperly) claims it is unclear whether he understood such warnings, but this argument is a red herring. The defendant does not seek to suppress incriminating statements made to law enforcement, the Government, or to an attorney. Rather, he seeks to suppress statements (written and oral), made to civilians and fellow detainees, expressing his desire to have his wife murdered and offering monetary compensation to those he wished to hire to commit the deed. Such statements are not subject to *Miranda* warnings or other warnings and his alleged inability to understand the warnings does not diminish the voluntary nature of the statements to ordinary civilians.

on the charges, and had been ordered detained by a judge); *United States v. Ripley*, No. 02-CR-1106 RCC, 2003 WL 21982964, at *4-5 (S.D.N.Y. Aug. 20, 2003) ("The fact that Defendant appeared before a judicial officer, was advised of his *Miranda* rights on three occasions and had the opportunity to consult with and retain counsel indicate that the August 6th statements were sufficiently attenuated from any unlawful conduct").

Finally, the Eighth Circuit has indicated that the "purpose and flagrancy of the official misconduct" is of particular importance. *Yorgensen*, 845 F.3d. at 915 (internal citations omitted). While the defendant submits he does not "accuse the Government of attempting to violate constitutional rights in this case[,]" in the same breath, he asserts the Government committed flagrant, unconstitutional misconduct because the Indictment was facially insufficient. And while he must make that argument in support of a motion to suppress, it fails both legally and factually. As discussed *supra*, the Indictment was not facially insufficient. However, even if this Court determined the Indictment was facially insufficient *and* the defendant's conduct was not a new crime, it begs the question: what intentional government misconduct occurred, justifying invocation of the exclusionary rule?

If the defendant believes that the misconduct leading to his pretrial detention was the return of a faulty indictment by the Grand Jury, then his motion should address prosecutorial misconduct and dismissal as a remedy. However, to accept the defendant's legal theory, the Court must conclude that: 1) the indictment was facially invalid; and 2) the Government intentionally sought a defective indictment in order to secure the unlawful detention of defendant; and 3) the Government knew in advance that defendant would commit a new crime while detained. This is absurd, considering Count One of the Indictment tracked the language of the statute[8], circuit

---

[8] 18 U.S.C. § 922(a)(6)

19

pattern jury instructions from seven Circuits[9], and indictments in multiple different federal circuits which have been deemed facially sufficient.[10] Such conduct can hardly be called misconduct, much less purposeful or flagrant misconduct that must be deterred.

The exclusionary rule "does not serve [its] deterrent function when the police action, although erroneous, was not undertaken in an effort to benefit the police at the expense of the suspect's protected rights." *United States v. Simpson*, 439 F.3d 490, 496 (8th Cir. 2006) (quotation omitted). The exclusionary rule is an "extreme sanction." *United States v. Leon*, 468 U.S. 897, 916 (1984). "Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217 (1960). Because defendant argues for suppression, he must identify a constitutional violation so egregious as to invoke the exclusionary rule as a deterrent to future misconduct. *Davis v. United States,* 564 U.S. 229, 246 (2011) (". . . we have said time and again that the *sole* purpose of the exclusionary rule is to deter misconduct by law enforcement. . .We have also repeatedly rejected efforts to expand the focus of the exclusionary rule beyond deterrence of culpable police conduct.") The defendant's arguments do not track with reality or the law, and his motion to suppress improperly attempts to expand the reach of the exclusionary rule.

The defendant's arguments regarding suppression of his statements amounts to nothing more than a "but for" standard, which is insufficient.  The factors laid out in *Brown* weigh in favor of the Government and establish that, even if the defendant was illegally detained, the defendant's statements and conduct were sufficiently attenuated from the alleged illegality and need not be

---

[9] *See* R. Doc. #102, Ex. 1
[10] *See United States v. Sholley-Gonzalez*, 4:18-CR-00090 RGE-HCA, R. Doc. 2; *United States v. Kaspereit*, 5:18-CR-00297-R, R. Doc. 1; *United States v. Combs*, 5:22-CR-00136 DCR-MAS, R. Doc. 5.

excluded from evidence. Therefore, the defendant's motion should be denied.

## Conclusion

For the foregoing reasons, the Government respectfully requests that this Court deny in its entirety the defendant's Motion to Suppress Evidence (Jail Calls, Texts, Etc.).

Respectfully submitted,

THOMAS C. ALBUS
United States Attorney

*/s/ Catherine M. Hoag*
CATHERINE M. HOAG, #67500MO
Assistant United States Attorney
111 S. 10th Street, 20th Floor
St. Louis, Missouri   63102
(314) 539-7723
Catherine.Hoag@usdoj.gov