UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                )
vs.                             )        Case No. 4:23 CR 274 JMD-JSD
                                )
MACE ANTHONY NOSOVITCH,         )
                                )
        Defendant.             )

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Mace Anthony Nosovitch's ("Defendant") Motion to Suppress Evidence (Residence) (ECF No. 63), Motion to Suppress Evidence (Autos) (ECF No. 65), and Motion to Suppress Evidence (Jail Calls, Jail Texts, Etc.) (ECF No. 67). The United States of America ("government") opposes the motions. For the reasons set forth below, the undersigned RECOMMENDS that the Motion to Suppress Evidence (Residence) (ECF No. 63), Motion to Suppress Evidence (Autos) (ECF No. 65), and Motion to Suppress Evidence (Jail Calls, Jail Texts, Etc.) (ECF No. 67) be DENIED.

### A. Procedural History

On February 1, 2023, Defendant's wife filed a petition for an order of protection against him in the Circuit Court of Saint Louis County, Cause Number 23SL-PN00528. Subsequently, an *ex parte* order of protection was issued and served on Defendant that same day. The *ex parte* order found, among other things, that there was "an immediate and present danger of domestic violence" by Defendant toward his wife. The order also prohibited him from committing or threatening to commit domestic violence against her, stalking her, molesting her, sexually assaulting her,

1

disturbing her peace, communicating with her or being within 500 feet of her. *See Nosovitch v. Nosovitch*, 23SL-PN00528 (St. Louis County Circuit Court). Notably, court records reflect hearings were set and continued at least three times at Defendant's request.

On May 14, 2023, while the *ex parte* order was purportedly still in effect, Defendant went to The Range St. Louis West gun store and firing range, a Federal Firearms Licensee located at 14803 Manchester Road, Ballwin, Missouri. Surveillance video, interviews with store employees, and receipts reflected that Defendant entered The Range shortly after 4:00pm and purchased 100 rounds of ammunition, range time, and two Sig Sauer 9mm handgun rentals, which he test fired for approximately two hours. One of the rented firearms had a silencer.

Defendant also attempted to purchase two firearms and a silencer. Utilizing an electronic tablet, Defendant completed Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473 ("Form 4473") for both firearms. Form 4473 asks several questions, including whether Defendant was subject to an order restraining him from harassing, stalking, or threatening an intimate partner.

Specifically, Form 4473 contained the following question:

[21] j. Are you subject to a court order, including a Military Protection Order issued by a military judge or magistrate, restraining you from harassing, stalking or threatening your child or intimate partner or child of such partner?

While completing Form 4473, Defendant stated "no" to question 21j.   He ultimately attempted to complete the transaction by submitting the form to the store's employee.   Form 4473 also states:

Qualifying Restraining Orders: Under 18 U.S.C. § 922, firearms may not be sold to or received by persons subject to a court order that: (A) was issued after a hearing which the person received actual notice of and had an opportunity to participate in; (B) restrains such person from harassing, stalking, or threatening an intimate partner or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms

2

explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury. An "intimate partner" of a person is: the spouse or former spouse of the person, the parent of a child of the person, or an individual who cohabitates or has cohabitated with the person.

Nevertheless, because The Range was almost closed for the day, the National Instant Criminal Background Check System check could not be completed. As such, Defendant paid a deposit for the items and left the store with the intent to return later and complete the transaction. Later, the National Instant Criminal Background Check System returned a result showing that Defendant was prohibited from purchasing firearms due to the *ex parte* order of protection against him. The Range subsequently refunded Defendant's deposit and the firearms purchase was not completed.

On May 24, 2023, FBI Special Agent Kassandra McKenzie ("Agent McKenzie") applied for and was granted a federal search warrant for Defendant's residence (4:23-MJ-3191 NCC). Said search warrant was executed on May 25, 2023. During the execution of the search warrant, law enforcement seized Defendant's Cadillac Escalade ("Cadillac"). On May 26, 2023, Agent McKenzie applied for and was granted a federal search warrant to search the Cadillac. (4:23-MJ-3197 NCC).

On May 24, 2023, a Grand Jury charged Defendant in a one-count Indictment (ECF No. 1), with a violation of 18 U.S.C. § 922(a)(6) for falsely reporting on Form 4473 that he was not subject to a court order disqualifying him from purchasing a firearm, as provided by 18 U.S.C. §922(g)(8). On May 25, 2023, Defendant appeared before a magistrate judge for his initial appearance, arraignment, and detention hearing. (ECF No. 7) On June 8, 2023, a magistrate judge ordered Defendant detained. (ECF No. 19)

On October 11, 2023, a Grand Jury charged Defendant in a Superseding Indictment, adding Count Two—Attempted Murder for Hire. (ECF No. 39) Count Two involved Defendant's purported attempts, while he was detained, to pay an individual to murder his wife. Count One remained the same as set forth in the original Indictment. On March 25, 2025, Defendant filed a Motion to Dismiss Count One [of the Superseding Indictment] (ECF No. 59), Motion to Suppress Evidence (Residence) (ECF No. 63), Motion to Suppress Evidence (Autos) (ECF No. 65), and Motion to Suppress Evidence (Jail Calls, Jail Texts, Etc.) (ECF No. 67).

On May 9, 2025, following a competency hearing, the government filed a Motion to Dismiss Count One [of the Superseding Indictment]. (ECF No. 144) The District Court granted the government's Motion to Dismiss Count One of the Superseding Indictment on May 12, 2025. (ECF No. 146) Consequently, Defendant withdrew his Motion to Dismiss Count One [of the Superseding Indictment] on May 19, 2025. (ECF Nos. 147 (granting dismissal of ECF No. 59), 149)

On June 10, 2025, the Court heard oral argument regarding the Motion to Suppress Evidence (Jail Calls, Jail Texts, Etc.) (ECF No. 67), but allowed additional time for the parties to file post-hearing briefs. On July 11, 2025, Defendant filed his post-hearing brief. On August 8 and September 3, 2025, the government filed motions for leave to file its post-hearing brief out of time. (ECF Nos. 156, 158). After the Court granted both motions (ECF Nos. 157, 160), the government filed its Response to Defendant's Post-Hearing Memorandum in Support of Motion to Suppress Evidence (Jail Calls, Text, Etc.) (ECF No. 161) on September 4, 2025. The parties agreed to submit Defendant's Motion to Suppress Evidence (Residence) (ECF No. 63) and Motion to Suppress Evidence (Autos) (ECF No. 65) as written. This Court deems these motions

4

wholly submitted as of September 4, 2025.

**B. Motion to Suppress Evidence (Jail Calls, Jail Texts, Etc.)**

In his Motion to Suppress Evidence (Jail Calls, Jail Texts, Etc.), Defendant asserts that he was illegally detained by virtue of an illegal indictment. Specifically, Defendant maintains that his arrest and continued detention prior to October 11, 2023, were unconstitutional in violation of the Fourth and Fifth Amendments, because Count One of the original Indictment – which is Count One of the Superseding Indictment – was fatally defective by failing to allege the essential elements of a charge under 18 U.S.C. § 922(a)(6). As such, Defendant argues that any statements or items obtained from him during his detention prior to filing of the Superseding Indictment are tainted by the unlawful arrest and detention. As discussed later, the Court holds that Defendant was not illegally detained. However, even if Defendant had been illegally detained, the Court finds that the Motion to Suppress Evidence should still be denied as the phone calls and messages were evidence of a new and distinct crime and intervening causes purged any alleged taint from the original illegal detention.

### 1. New and Distinct Crime

Assuming *arguendo* that Defendant was improperly indicted and arrested for violation of 18 U.S.C. § 922(a)(6), the Court addresses whether the evidence (phone calls and messages) Defendant seeks to suppress were obtained by exploitation of that illegal arrest, *i.e.*, a "fruit of the poisonous tree." Defendant essentially argues that the phone calls and text messages would not have been generated absent his illegal detention and, consequently, that evidence should be suppressed. (ECF No. 154 at 11)

"Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment

5

may not be introduced at trial to prove a defendant's guilt." *United States v. Chaney*, 192 F. Supp. 3d 992, 1013 (E.D. Mo. 2016) (citing *Elkins v. United States,* 364 U.S. 206, 223–24 (1960) (evidence obtained as the result of an unreasonable search and seizure by state officers cannot be used against defendant in federal court)). More to it, under the "fruit of the poisonous tree doctrine," evidence or statements derived from such illegal police conduct is subject to the exclusionary rule. *Wong Sun v. United States*, 371 U.S. 471, 485, 487-88 (1963); *Chaney*, 192 F. Supp. 3d at 1013 ("The exclusionary rule applies to verbal statements obtained as a result of official misconduct as well as to the more traditional seizure of physical evidence."); *United States v. Yousif*, 308 F.3d 820, 832 (8th Cir. 2002) ("Verbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search."). The purpose of the exclusionary rule is to deter constitutional violations. *See United States v. Leon,* 468 U.S. 897, 906 (1984). In addition to Fourth Amendment protections, the Fifth Amendment also offers protection. U.S. Const. amend. V. ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury….") As such, evidence and statements obtained in violation of the Fifth Amendment are subject to the exclusionary rule as "fruit of the poisonous tree."

Here, Defendant acknowledges binding Eighth Circuit case law holding that the commission of a new and distinct crime during an alleged unlawful detention does not implicate the exclusionary rule under either the Fourth or the Fifth Amendments. (ECF No. 154 at 11 (citing *United States v. Hunt,* 372 F.3d 1010, 1012 (8th Cir. 2004)) However, he argues that, unlike in *Hunt*, Count Two here is "inextricably intertwined with the Defendant's prolonged illegal detention… and… with the restraining order that he was charged with lying about." (ECF No. 154

6

at 11-12)

In *Hunt*, the defendant, Hunt, was a passenger in a car that was subject to a search by Iowa troopers. *Id*. Hunt and the car's driver were eventually arrested on drug charges. *Id*. Later at the police post, after an officer introduced himself as a member of state and federal drug task forces, Hunt attempted to bribe the agent in exchange for dropping the charges. *Id*. The government charged Hunt with drug offenses and with obstruction of justice for trying to bribe the agent. *Id*. After the drugs were suppressed, Hunt was tried and convicted on the obstruction of justice charge. *Id*. On appeal, Hunt asserted that the district court should have suppressed his statement offering money to the agent because the statement was the product of an illegal detention and arrest and was obtained in violation of his Fourth and Fifth Amendment rights. *Id*. The Eighth Circuit held that the attempted bribery statement was not the product of an illegal detention because "[w]hen a defendant commits a new and distinct crime during an unlawful detention, the Fourth Amendment's exclusionary rule does not bar evidence of the new crime." *Id.* (citing *United States v. Sprinkle,* 106 F.3d 613, 619 & n. 4 (4th Cir.1997); *United States v. Garcia–Jordan,* 860 F.2d 159, 161 (5th Cir.1988); *United States v. Bailey,* 691 F.2d 1009, 1016–17 (11th Cir.1983); *see also United States v. Udey,* 748 F.2d 1231, 1240 (8th Cir.1984)).

Defendant further tries to distinguish *Hunt* by contending that *Hunt* did not involve a second crime relating the same officer or witness related to the original detention. (ECF No. 154 at 11-12) That is, Defendant contends Count Two "does not involve an effort to bribe an officer (as in *Hunt*), to assault an officer or witness involved in the detention, or to commit any other offense directly related to the detention." (ECF No. 154 at 12)

The Court finds Defendant's attempt to distinguish *Hunt* to be a distinction without a

7

difference. Defendant essentially argues that attempting to commit murder-for-hire upon his wife is not a "new and distinct" offense because his wife was also the subject of the order of protection related to the purportedly fraudulent Form 4473. However, simply because both crimes related to Defendant's wife does not mean that the recording evidence was obtained 'by exploitation' of the primary illegality. Indeed, the conduct alleged in Count Two is a new and distinct offense and not a continuation of the conduct charged in Count One just because both crimes have the same victim. "A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982). Moreover, "extending the fruits doctrine to immunize a defendant from arrest for new crimes gives a defendant an intolerable carte blanche to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct. This result is too far reaching and too high a price for society to pay in order to deter police misconduct." *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982).

Thus, based upon the foregoing, the Court finds that, even if Defendant had been improperly incarcerated for lying on Form 4473, Defendant's attempt to hire someone to murder his wife is a new and distinct crime and not a basis for suppression of his jailhouse calls and texts.

### 2. Intervening Causes

Similarly, Defendant contends that no intervening causes purged the taint of the defective indictment such that the recordings and texts remained fruit of the poisonous tree. (ECF No. 154 at 9-10) Defendant asserts that the taint of his illegal detention was not purged by the giving of *Miranda* warnings or subsequent, intervening circumstances because his seizure was the direct product of his continued detention. In other words, Defendant claims that "the evidence harvested

8

during Dr. Nosovitch's incarceration was the direct exploitation of the primary illegality." (ECF No. 154 at 11) Defendant contends that the evidence must be withheld because "[w]ithout that detention, no further evidence of wrongdoing would have been generated." (ECF No. 154 at 11)

Defendant acknowledges that the seizure of the recordings and texts came "well after" Defendant's arrest. (ECF No. 154 at 10) However, he argues that because his seizure was "the direct product of the continued detention," then "there was in practical effect no space of time between the detention and the seizure." *Id*. Further, given that medical examiners have determined that he was unable to comprehend Question 21j on Form 4473 (ECF No. 136), Defendant maintains that he was unable to understand and knowingly waive his constitutional rights under *Miranda*, so as to consider it an intervening circumstance. (ECF No. 154 at 10-11) Thus, Defendant contends that his illegal incarceration directly resulted in the procurement of the recordings and other evidence. (ECF No. 154 at 11) Given that nothing occurred to interrupt that detention or put it on a new course until the Superseding Indictment was filed, Defendant asserts that the evidence must be suppressed. *Id*. In addition, Defendant stresses that the government's misconduct was flagrant and that the government "procured a facially insufficient indictment and used it to achieve a prolonged illegal detention of the Defendant." *Id*.

Under well-settled authority, when evidence is seized during a search of the person after an illegal arrest, it will be suppressed as the tainted product of the unlawful police action, unless the prosecution carries its burden of showing that the taint has been purged. *Brown v. Illinois,* 422 U.S. 590, 600-04 (1975); *United States v. Bailey*, 691 F.2d 1009, 1013 (11th Cir. 1982); *United States v. Hill*, 626 F.2d 429, 437 (5th Cir. 1980); *Chaney*, 192 F. Supp. 3d at 1013 ("A court may admit evidence that would not have been discovered but for official misconduct only if the causal

9

connection between the illegal conduct and the acquisition of the evidence is sufficiently attenuated to purge the evidence of its initial taint."). If the defendant establishes a nexus between a constitutional violation and the discovery of evidence sought to be excluded, the government must show the challenged evidence did not arise "by exploitation of that illegality ... [but] instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. Hastings*, 685 F.3d 724, 728 (8th Cir. 2012) (quoting *Wong Sun*, 371 U.S. at 488).

Nevertheless, evidence should not be excluded from trial based on a constitutional violation unless the illegality is at least a but-for cause of obtaining the evidence. *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007) (citing *Hudson v. Michigan,* 547 U.S. 586, 126 S.Ct. 2159, 2164, (2006); *Segura v. United States,* 468 U.S. 796, 815 (1984)). If a defendant establishes a "but for" relationship between evidence and prior illegality, the burden shifts to the prosecution to show that the connection between the evidence and the illegality is so attenuated as to dissipate the taint. *See United States v. Swope*, 542 F.3d 609, 613 (8th Cir. 2008) (noting that "the exclusionary rule is inapplicable when the connection between the constitutional violation and the evidence to be excluded is 'so attenuated as to dissipate the taint.'") (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)); *Yousif*, 308 F.3d at 830 (quoting *Wong Sun*, 371 U.S. at 484–85) ("The controlling question is 'whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'").

In order to exclude evidence under the "fruit of the poisonous tree doctrine," the defendant must show more than "the mere fact that a constitutional violation was a 'but-for' cause of [the police's] obtaining [the] evidence." *Hudson*, 547 U.S. at 592; *accord* U*nited States v. Peralez*, 526

F.3d 1115, 1121 (8th Cir. 2008) ("Only if the constitutional violation was at least a but-for cause of obtaining the evidence is suppression of evidence the appropriate remedy.") (internal quotation marks omitted). That is, "but-for causality is only a necessary, not a sufficient, condition for suppression." *Hudson*, 547 U.S. at 592.; *see Segura v. United States*, 468 U.S. 796, 814 (1984) (holding that illegality as a but for cause of the acquisition of the evidence is a necessary, but not sufficient condition for exclusion under the fruit of the poisonous tree doctrine). As the Eighth Circuit has explained, "[t]here is no reason to exclude evidence, however, if 'the police misconduct is not even a 'but-for' cause of [the] discovery' of the evidence." *Marasco*, 487 F.3d at 547 (quoting *Hamilton v. Nix*, 809 F.2d 463, 465 (8th Cir.) (en banc). "In other words, at some point, while evidence may still be 'fruit,' it is, nonetheless, admissible because it is no longer 'tainted.'" *United States v. Riesselman*, 708 F. Supp. 2d 797, 814 (N.D. Iowa 2010), *aff'd,* 646 F.3d 1072 (8th Cir. 2011).

In conducting this fact-sensitive inquiry, the Eighth Circuit Court of Appeals has instructed courts to consider the following factors: "(1) the giving of *Miranda* warnings, (2) the temporal proximity of the illegal [conduct] and the alleged consent, (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct." *United States v. Lakoskey,* 462 F.3d 965, 975 (8th Cir. 2006) (internal quotation marks and citation omitted); s*ee also United States v. Thompson*, 35 F.3d 100, 105 (2d Cir. 1994) (citing *Brown v. Illinois*, 422 U.S. 590, 603 (1975)); *United States v. Hester*, No. S1 19-CR-324 (NSR), 2020 WL 3483702, at *17 (S.D.N.Y. June 26, 2020).

Here, based on an examination of these factors, the Court concludes that any taint from the illegal indictment was sufficiently attenuated such that the evidence is admissible. *E.g., United*

11

*States v. Ceccolini*, 435 U.S. 268, 279-80 (1978). To be sure, the text and phone call evidence was not the "fruit of the poisonous tree" because its discovery was too attenuated from his initial arrest and detention. Clearly, by the time he made the relevant statements, Defendant had been given his *Miranda* warnings, been arraigned and had a detention hearing, and hired two different attorneys. (ECF No. 161 at 18) *See United States v. Ripley*, No. 02 CR. 1106 RCC, 2003 WL 21982964, at *4-5 (S.D.N.Y. Aug. 20, 2003) ("The fact that Defendant appeared before a judicial officer, was advised of his *Miranda* rights on three occasions and had the opportunity to consult with and retain counsel indicate that the August 6th statements were sufficiently attenuated from any unlawful conduct.").[1] The temporal proximity also weighs in favor of finding attenuation. Defendant's attempts to pay someone to kill his romantic partner occurred months after his arrest. Further, his incarceration also presents intervening circumstances. Indeed, it was during this time that he was informed of the criminal investigation into his relationship with his romantic partner and the consequential basis for his detention. Finally, the Court finds that the purpose and method behind the officers' actions separates them from any purported illegal detention. Officers arrested Defendant based upon an Indictment issued by a grand jury. There is also no evidence showing that the officers were acting to purposefully frustrate Defendant's rights or that they engaged in

---

[1] Although he argues that he could not understand the *Miranda* warnings, Defendant, however, had met with his counsel and presumably was informed not to make any statements. Further, the Court notes that Defendant should have been aware that any jailhouse conversations were recorded either from the notices in the jail or from his counsel. *United States v. Hester*, No. S1 19-CR-324 (NSR), 2020 WL 3483702, at *17 (S.D.N.Y. June 26, 2020) ("Moreover, as the Government notes, and Defendant does not seriously dispute, the calls were made by Defendant as a matter of course by defendant's own volition and upon notice that such calls are recorded at WCF."). Further, as noted by the government, his argument that Defendant could not understand his *Miranda* and jail telephone warning is a red herring because Defendant made voluntary and spontaneous statements made to civilians, while not under questioning by officers. *See, e.g., United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005); *United States v. McGlothen*, 556 F.3d 698, 701–02 (8th Cir. 2009); *United States v. Hawkins*, 102 F.3d 973, 975 (8th Cir. 1996); *United States v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005); *United States v. McLaughlin*, 777 F.2d 388, 390 (8th Cir. 1985); *United States v. Turner*, 157 F.3d 552, 556 (8th Cir. 1998); *United States v. Barnes*, 195 F.3d 1027, 1029 (8th Cir. 1999).

misconduct during the charging process. Thus, any bare conclusion that the recordings were a fruit of an illegal seizure due to officers' misconduct and the like is plainly unwarranted. *See Wong Sun*, 371 U.S. at 491 (concluding that an unsigned confession was not the fruit of illegal arrest where defendant "had been released on his own recognizance after a lawful arraignment" and returned to "voluntarily ... make the statement").

Further, the Court notes that the recorded calls and messages were obtained from independent communications with third parties, thereby not implicating the Fourth Amendment. Jailhouse conversations at the relevant jails in this case are always recorded. Consequently, the officers did not exploit the alleged illegal detention by recording Defendant's attempt to have his partner murdered. *See United States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018) (officers would have called for a canine unit even had he not discovered the false bottom in a bag, which was discovered as part of a prior unlawful search). Indeed, the Court reiterates that the exclusionary rule's "sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236–37 (2011); *Tuton*, 893 F.3d at 569; *see also Oregon v. Elstad*, 470 U.S. 298, 306 (1985) ("The purpose of the Fourth Amendment exclusionary rule is to deter unreasonable searches, no matter how probative their fruits."); *accord Stone v. Powell*, 428 U.S. 465, 486–89 (1976) (holding deterrence of Fourth Amendment violations by law enforcement personnel is the prime purpose of the exclusionary rule); *United States v. Scroggins*, 361 F.3d 1075, 1083 (8th Cir. 2004) ("The exclusionary rule's purpose is deterrence."). Here, excluding evidence obtained from Defendant's jail calls and texts would serve as no admonition for future Fourth Amendment violations because the evidence was acquired through an independent, untainted source. *Wong Sun*, 371 U.S. at 487. Thus, because Defendant has not shown that the

police misconduct was the 'but for' cause of the discovery of the phone calls and messages, the evidence should not be excluded.

### 3. Deficient Indictment

Defendant contends that Count One was fatally defective because he could not have improperly and knowingly checked the box for Question 21j because, at the time, he was subject only to an *ex parte* order, not a qualifying order with notice and hearing. In addition, Defendant asserts that Count One failed to state that he checked the box knowingly. Defendant maintains that "[b]ecause the circuit court minutes conclusively reflect that no such qualifying order had been entered when [Defendant] completed Form 4473, the Government could not have alleged such a knowing falsehood." (ECF No. 154 at 6) Based upon this alleged pleading deficiency, Defendant argues that the absence "of a qualifying order renders the indictment a nullity." *Id*.

Defendant further argues that, because the indictment under §922(a)(6) is fatally defective, his arrest and detention prior to the Superseding Indictment were "unlawful." (ECF No. 154 at 8) Defendant maintains that "a defective indictment, omitting essential elements of the offense, certainly precludes proceeding to trial, and, a fortiori, precludes arrest and detention of the defendant." (ECF No. 154 at 9) Defendant further extrapolates that, "if the defendant's detention is unlawful, it follows that evidence obtained as a result of that illegal detention must be suppressed." (ECF No. 154 at 9 (no citation provided))

A detention as the result of a facially invalid indictment is equivalent to any unfounded judicial determination of probable cause--for, as is well established, a grand jury indictment is a determination of probable cause. *See Washington v. Howard*, 25 F.4th 891, 903 (11th Cir. 2022) (citing *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 369, n.8 (2017). If the finding of probable cause

by the indictment is invalid—for example, where the original indictment does not and cannot allege essential elements of the offense—then the pretrial detention of the defendant is invalid. *See Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546 (4th Cir. 2017) (legal process instituted against arrestee, and his resulting pretrial detention, were unsupported by probable cause; continued pretrial detention based on false affidavit contravened Fourth Amendment)". Nevertheless, generally, an indictment is sufficient if it "first, contains the elements of the charged offense and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead double jeopardy as a bar to a future prosecution." *Hamling v. United States,* 418 U.S. 87, 117 (1974); *United States v. Just*, 74 F.3d 902, 903–04 (8th Cir. 1996). More specifically, an indictment adequately states an offense if:

> it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted.

*United States v. Hernandez,* 299 F.3d 984, 992 (8th Cir. 2002) (quoting *United States v. Fleming,* 8 F.3d 1264, 1265 (8th Cir. 1993)). In sum, an indictment is normally sufficient if its language tracks the statutory language. *Hamling,* 418 U.S. at 117; *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).

The indictment here was sufficient. To be sure, the government charged Defendant with making a false statement, wherein he knew that the statement was false and that the statement was intended or likely to deceive the seller of the firearm with respect to the material fact as to the legality of the sale. *See United States v. Karani*, 984 F.3d 163, 171, n.14 (1st Cir. 2021) ("To prove a violation of § 922(a)(6), the government needed to prove that an oral or written statement was

15

made knowingly, was false, and was material to the lawfulness of a federal firearms sale."); *United States v. Brown*, 82 F.3d 411 (4th Cir. 1996) ("To sustain a conviction for making a false statement to a federally licensed firearms dealer in connection with the purchase of a firearm, the Government had to prove that Brown knowingly made a false statement to a licensed firearms dealer, that the false statement was made in the acquisition of a firearm, and that the false statement was likely to deceive the firearms dealer."); *United States v. Harrelson*, 705 F.2d 733, 736 (5th Cir. 1983) ("To establish a violation of § 922(a)(6), the government must show that the defendant knowingly made a false statement which was intended to deceive or likely to deceive the firearms dealer."); *United States v. Meech*, No. 21-30025, 2022 WL 136823, at *1 (9th Cir. Jan. 14, 2022) ("The model jury instruction for 18 U.S.C. § 922(a)(6) identifies four elements: (1) the seller was a licensed firearms dealer; (2) the defendant made a false statement in connection with acquiring or attempting to acquire a firearm from the seller; (3) the defendant knew the statement was false; and (4) the false statement was material, meaning capable of influencing or having a natural tendency to influence the seller into believing the firearm could be lawfully sold to the defendant.").

As such, each of the four required elements contained in the statutory text of Section 922(a)(6) were present in Count One of the original Indictment. According to Defendant's argument, however, the only missing "essential" element was that the court order restraining him from harassing, stalking or threatening his intimate partner was a "qualifying" order. Under Defendant's theory, the government was required "to prove a defendant knew he belonged to a category of prohibited persons." *United States v. Kaspereit*, 994 F.3d 1202, 1207 (10th Cir. 2021).

However, the law imposes no such a requirement and Defendant cites no law to the

contrary. Indeed, Defendant only had to know that he was subject to a protective order, not the more specific *mens rea* that Defendant would mandate. *See Kaspereit*, 994 F.3d 1202, 1208 (10th Cir. 2021) ("If the false statement is 'I am not subject to a protective order,' the government must prove the defendant knew he was, indeed, subject to a protective order. Although this may seem like a requirement that the defendant know of his membership in a prohibited class of persons (at least under these facts), § 922(a)(6) does not *necessarily* require that.") (emphasis in original). On its face, the Indictment pleaded the essential elements of a § 922(g)(6) offense in that he knew he was subject to an order of protection. *Cf. United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021) (holding that the indictment under Section 922(g)(8) was facially sufficient despite the protection order not identifying S.O. as an intimate partner because Section 922(g)(8) simply does not require that the court-order form identify the protected party as an intimate partner). More to it, the Court will not engage in any pretrial determination of the sufficiency of the evidence. *Sholley-Gonzalez*, 996 F.3d at 893 ("Sholley-Gonzalez urges us go beyond the indictment and review the underlying protection order, but when courts go beyond the face of the indictment, they are testing the sufficiency of the evidence, not whether the indictment stated an offense."). Thus, the Court finds that Count One of the Indictment was sufficiently pleaded as a matter of law and cannot be the basis for a motion to suppress evidence.

### C.  Motion to Suppress Evidence (Residence) (ECF No. 63)

#### 1.  Findings of Fact

On May 24, 2023, an FBI agent applied for and obtained a warrant to search the apartment in Chesterfield, Missouri where Defendant and his mother resided. *See* 4:23-MJ-3191 ("3191"). The 3191 application and warrant specified the following items to be searched for and seized:

17

All records and information that constitute contraband, fruits, evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 922(a)(6)(false statements related to the sale of a firearm and ammunition), 922(g)(8)(possession of a firearm and ammunition by a prohibited person), and 1001 (false statements)("subject offenses") have been committed by Mace NOSOVITCH, including:

a. Surveillance equipment, including all digital data extracted therefrom;

b. Firearms/weapons and ammunition;

c. Firearms/weapons accessories, including, but not limited to, sights, receipts of firearms purchase, firearm cases, firearm boxes, firearm warranty cards, firearm manuals, firearm magazines, firearm holsters, firearm cleaning equipment, etc.

d. Electronic devices, including internet-connected devices capable of researching and/or purchasing firearms or ammunition;

e. NOSOVITCH'S electronic and/or cellular device(s) and any evidence linking the device(s) to NOSOVITCH;

f. Items belonging to the Protected Party and/or Protected Children;

g. Documents, including receipts, related to the purchase or attempted purchase of any weapons, order of protection, travel to areas where Protected Party/Children were present;

h. Clothing visible on surveillance video as worn by NOSOVITCH and/or Karen Nosovitch;

i. Papers, tickets, notes, schedules, receipts and other items relating to travel, including, but not limited to, travel to and from St. Louis, Missouri and elsewhere, and

j. Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys.

On May 25, 2023, Defendant was arrested on the Indictment, *see* 4:23-MJ-2095, and the Chesterfield apartment was searched. *See* 4:23-MJ-3191. During the search, officers seized a tablet, three laptop computers, and a cellular phone. *See* 4:23-MJ-3191, ECF No. 8, amended return.

On June 20, 2023, Agent McKenzie applied for and was granted federal search warrants to search Defendant's electronic devices, including a tablet, three laptop computers, and a cellular phone. *See* 4:23-MJ-2095, 1-5. These applications all referenced the *ex parte* order of protection against Defendant, as well as his alleged violations of that order. In addition, the applications

18

related to Defendant's attempt to purchase two firearms at The Range, the details of the Form 4473, and the rejection of his purchase by the NCIS system. Agent McKenzie, based upon her training and experience, identified ways individuals "who purchase firearms conduct research of the firearms on their electronic devices prior to choosing a firearm to purchase… [and] use multiple methods in order to stalk and harass their victims, including, but not limited to physical surveillance, taking photographs of the victim, the use of other persons, frequent searches of a victim's online activity to find their location, calling, and digital messaging." 4:23-MJ-2095, ¶ 25. She also described the ways in which electronic devices can be used to stalk or harass, including communicating with victims, associates, or co-conspirators, accessing maps and location services, taking pictures and videos, and looking at social media. *Id*., ¶ 29.

The Court granted permission to search the electronic devices for "[e]vidence, instrumentalities and contraband concerning violations of" the previous referenced crimes, including information regarding: 1) location information for the device; 2) notes, photos, documents, records, correspondence, and internet history regarding firearms and ammunition; 3) records pertaining to accounts with Internet Service Providers; 4) information regarding individuals who may have contacted the Defendant for the purpose of interstate stalking or firearms purchases; 5) records, including internet history regarding interstate stalking of the Defendant's wife or children. 4:23-MJ-2095. In addition, the FBI sought and obtained a warrant, directed to the cell phone provider, for the number of the cell phone seized. *See* 4:23-MJ-2094.

### 2.  Discussion

In the Motion to Suppress Evidence (Residence), Defendant asks this Court to suppress all evidence seized from 116511 Wild Horse Creek Road, Apartment 134, including the computers,

a tablet computer, and a cell phone, as well as the contents within those electronic devices. He argues that the search warrants lacked probable cause and were facially overbroad. (ECF No. 64 at 6)

The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test ... to determine whether probable cause exists." *United States v. Hager*, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted). In addition, "[t]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (quoting *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Wiley*, No. 09-cr-239

(JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (quoting *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005). In addition, the issuing court's "'determination of probable cause should be paid great deference by reviewing courts,'" *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the issuing court] had a 'substantial basis for ... [concluding]' that probable cause existed." *Id*. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). Furthermore, "under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *United States v. Mayweather*, 993 F.3d 1035, 1041 (8th Cir. 2021) *(quoting United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012)). Thus, when the exception applies, evidence "seized pursuant to a warrant that lacked probable cause" is admissible at trial. *United States v. Norey*, 31 F.4th 631, 635 (8th Cir. 2022); *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011).

Initially, the Court notes that the Motion to Suppress lacks specificity as required by the Court's pretrial motion order. *See* ECF No. 16.[2]  Indeed, the specific language of the pretrial order asserts, among other things, that "any motion to suppress shall set forth, with particularity, the item(s) of evidence to which the motion is addressed and shall set forth specific factual details" in support of the motion. *Id*. The order further states that "[a]ny motion to suppress not containing such specific information or any motion cast in conclusory or conjectural terms will not be heard

---

[2]  Under the law, "even in those circumstances where the Government has the ultimate burden of persuasion, Defendant has the initial burden of making a prima facie showing of illegality." *United States v. Starks*, 193 F.R.D. 624, 629 (D. Minn. 2000); *United States v. Edwards*, 563 F. Supp. 2d 977, 994 (D. Minn. 2008), *aff'd sub nom. United States v. Bowie*, 618 F.3d 802 (8th Cir. 2010). Critically, "the moving papers [must be] sufficiently definite, specific, and detailed to establish a contested issue of fact." *See United States v. Stevenson*, 727 F.3d 826, 830 (8th Cir. 2013); *see also United States v. Mims*, 812 F.2d 1068, 1073-74 (8th Cir. 1987).The Court's Pretrial Motions Order essentially follows this legal standard.

or considered by the court." *Id*. Because Defendant failed to identify the specific evidence he seeks to have suppressed and failed to conduct any legal analysis; he failed to comply with the pretrial order. *Id*. Thus, this Court could summarily deny the Motion to Suppress Evidence (Residence) on this basis alone.[3]

### *Sufficiency of the Motion*

Nevertheless, looking to the merits, Defendant argues that the warrant failed to provide adequate probable cause as to the search of his cell phones and computers. (ECF No. 64 at 6) That is, Defendant contends that the only basis on which the FBI sought to search and seize cell phones and computers and their contents was the "experience and training" of the FBI affiant. *Id*. However, Defendant notes that the initial warrant application to search his apartment did not mention any offenses other than the violation of 18 U.S.C. §922(a)(6) and §1001 relating to false statements, and the suspicion of violation of §922(g)(8), concerning illegal possession of firearms. (ECF No. 64 at 7) Defendant further maintains that the application failed to include any indication that he used cell phones or computers in any of his allegedly illegal activities in April or May 2023. *Id*. Thus, Defendant claims that the government's warrant failed to demonstrate a nexus between the seized electronic devices and the identified criminal behavior. (ECF No. 64 at 8)

In addition, Defendant contends that the warrant is invalid because it fails to meet the particularity requirements. (ECF No. 64 at 8 (citing *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) ("General warrants of course, are prohibited by the Fourth Amendment. "[T]he problem (posed by the general warrant) is not that of intrusion Per se, but of a general, exploratory rummaging in a person's belongings. . . . [The Fourth Amendment addresses the problem] by

---

[3] The Court also determines that the same reasoning applies to the Motion to Suppress Evidence (Autos) but will not repeat that discussion there.

requiring a 'particular description' of the things to be seized."")). Defendant asserts that, based upon the catalogue of electronic devices searched, that the agents were largely able to view anything on the devices: "While there is some effort [to] connect items to offenses, there is no limitation as to time--the *ex parte* order was not served until February 1, 2023, no limitation as to identity of persons with whom there were communications, no limitation as to the accounts or other information pertaining to internet service. In short, the searching agents could view practically anything on any of the devices." (ECF No. 64 at 8-9)

Finally, Defendant preemptively asserts that the "good faith" exception from *United States v. Leon* is inapplicable because the facial insufficiency of the warrants is evident, particularly the warrant authorizing seizure of the devices as part of the apartment search, such that no reasonably officer could have believed the warrant was valid. (ECF No. 64 at 9 (citing *Leon*, 468 U.S. 897 (1984))

To the extent that Defendant seeks to suppress the items seized pursuant to the search warrant described above, the Court recommends that Defendant's Motion to Suppress Evidence (Residence) (ECF No. 63) be denied. Undoubtedly, the warrants for Defendant's residence and electronic devices were supported by probable cause. "Probable cause means a 'fair probability' that the object of the search warrant may be found in the place to be searched." *United States v. Montgomery,* 527 F.3d 682, 686 (8th Cir. 2008) (quotation omitted); *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009). "Whether a search warrant is supported by probable cause is determined by the totality of the circumstances[.]" *United States v. Kattaria,* 553 F.3d 1171, 1175 (8th Cir. 2009) (internal quotations and citations omitted); *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009). *See United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021) (quoting *United*

*States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996) ("Our task when reviewing search warrants after the fact is to determine whether the judges who approved them had 'a substantial basis for concluding that probable cause existed.'"). The Supreme Court and this Circuit have made clear that the "mere evidence" sought by a search warrant does not need to be an instrumentality of the crime. *United States v. Saddler*, 19 F.4th 1035, 1039 (8th Cir. 2021). "Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967).

Here, the FBI's agent's Affidavit outlined, among other things, Defendant's stalking behavior, the *ex parte* order entered against him, and Defendant's attempt to purchase a firearm, including completing the ATF Form 4473. *See* 4:23-MJ-2095, ECF No. 1, Affidavit of Kassandra L. McKenize, ¶¶ 5-17. The Affidavit further explained that, based upon the agent's training and experience, electronic devices can be used to stalk and/or communicate with co-conspirators and victims. *Id.*, ¶ 25. In addition, the electronics devices Affidavit described Agent McKenize's experience that people "who express an interest in firearms" and people "who talk and harass others frequently retain images of firearms and images taken while stalking their victims" on digital devices. *Id.*, ¶ 27. Indeed, Agent McKenize attested that individuals who travel to stalk often use multiple devices. *Id.*, ¶ 28. Agent McKenize, again based upon her training and experience, noted that individuals engaged in criminal activities involving stalking often use electronic devices to communicate with the victim associates, co-conspirators, or third-parties; to access mapping and location services; to access contact lists of the victim, associates, confederates, and third parties; to take pictures and videos of victims, themselves and associates; and to

24

communicate over social media platforms and display images and videos of their victims, firearms, and to memorialize their criminal activities. *Id.*, ¶ 29. Thus, the Court finds that the Affidavit provides a sufficient nexus between the alleged crimes and electronic evidence that will aid in Defendant's apprehension or conviction.

Moreover, the Court finds that cell phones and other electronic devices, while they may or may not be the means of the criminal activity, they nevertheless may otherwise provide evidence or a trace of criminal activity. Based upon the trove of information stored on electronic devices, as well as the "ubiquitous" nature of the cell phone, the Court finds probable cause to believe that the search and seizure of Defendant's cell phone would aid in his apprehension and conviction. *United States v. Eggerson*, 999 F.3d 1121, 1125 (8th Cir. 2021) (citing *Riley v. California*, 573 U.S. 373, 395 (2014).

Finally, even if the Court found that Agent McKenzie's search warrants lacked probable cause, the Court holds that the *Leon* good faith exception is applicable. "Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *United States v. Mayweather*, 993 F.3d 1035, 1041 (8th Cir. 2021) (citation omitted). "To determine whether an officer had 'an objectively reasonable belief in the existence of probable cause,' this Court assesses 'the totality of the circumstances, including information known to the officer but not presented to the issuing judge.'" *United States v. Norey*, 31 F.4th 631, 635 (8th Cir. 2022) (citation omitted). Further, the Court may consider whether the good-faith exception applies without considering whether probable cause to support the issuance of the search warrant exists. *Id.* "The good-faith inquiry is confined to the objectively ascertainable

question whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *United States v. Williams*, 976 F.3d 807, 809 (8th Cir. 2020) (citation omitted).

Here, Agent McKenzie's Affidavits and the corresponding warrants were not facially insufficient and, therefore, the *Leon* good faith exception applies. *See United States v. Lindsey*, 43 F.4th 843, 848 (8th Cir. 2022). Indeed, Agent McKenzie's Affidavits provided several factual statements identifying the basis for the warrants, including information regarding Defendant's prior stalking and order of protection. In addition, Agent McKenzie detailed her prior training and experience with individuals who stalked their romantic partners and their tendency to utilize cellular and electronic devices to communicate with others, to aid their illegal efforts, and to memorialize their activities. Agent McKenzie also noted that the electronic and cellular information could provide information that may be used to track or identify Defendant's location during the criminal activities.

### D. Motion to Suppress (Autos) (ECF No. 65)

#### 1. Background

As part of the investigation into alleged violations of his *ex parte* order, Defendant was seen driving a Cadillac. *See* 4:23-MJ-3197. The FBI searched Defendant's apartment on May 24, 2023, and he was arrested on May 25, 2023. On May 26, 2023, Agent McKenzie applied for and was granted a federal search warrant to search Defendant's Cadillac. *See* 4:23-MJ-3197. The search resulted the seizure of only a key fob for a Jeep. *See* 4:23-MJ-3197, return. On June 2, 2023, Agent McKenzie applied for and was granted a federal search warrant to search a Jeep rented by Defendant. *See* 4:23-MJ-2036. The Jeep had previously been located and seized from Defendant's

car wash facility, which was located several miles from his estranged wife's home. *See* 4:23-MJ-2036, ECF No. 1, application. The Affidavit presented with the application for the search of the Jeep discussed the history of Defendant's violations of the order of protection, his attempted purchase of a firearm, and the use of his Cadillac. *See* 4:23-MJ-2036, ECF No. 1. The Affidavit and police reports referenced in the Affidavit do not mention use of the Jeep in connection with Defendant's stalking of his estranged wife or his attempted purchase of the firearm.

The warrants for the searches of the autos sought the following information (material in brackets indicates differences between Cadillac and Jeep applications--the Jeep is referenced as Target Vehicle 2):

    a. Information relative to identifying those individuals who were present inside the Target Vehicle in April and May 2023 [Target Vehicle 2 in May 2023];

    b. Cellular devices, records, or other items indicative or [sic] an individual's presence within the Target Vehicle [Target Vehicle 2] at any given time;

    c. Information relevant to the facts and circumstances as to how and/or why the subject offenses occurred;

    d. Fingerprints;

    e. Other items possessing DNA characteristics;

    f. Any item possessing genetic, forensic, or other material;

    g. Firearms;

    h. Firearm-related materials such as ammunition, shell casings, or magazines;

    i. Books, records, receipts, notes, ledgers, computer hard-drives and disk records, and other papers relating to the subject offenses;

    j. Information relative to identifying the travel and movement of the Target Vehicle [Target Vehicle 2], including but not limited to, navigation system(s) or other computer-or GPS-based technology;

    k. Papers, tickets, notes, schedules, receipts and other items relating to the subject offenses and/or travel, including, but not limited to, travel to, from, and within St. Louis, Missouri and elsewhere;

    l. Indicia of occupancy, residency, rental and/or ownership of the vehicle described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys; and

    m. Clothing and accessories consistent with the clothing and accessories worn by suspects or victims depicted in surveillance video.

2. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and

instrumentalities described in this warrant.

### 2. Discussion

Defendant argues that the warrantless seizure and subsequent search of the Jeep were unlawful because (a) the seizure of the Jeep was without probable cause to be believe it had been used as the instrumentality of a crime or contained evidence of a crime; and (b) the warrant subsequently obtained to search the interior of the vehicle was not based on probable cause in whole or in part and was overbroad on its face. (ECF No. 66 at 5)

Defendant also contends that federal officers seized the Jeep from his business premises without a warrant because (1) Defendant had rented the Jeep; (2) Defendant drove the Jeep during May 2023; (3) the Jeep's key fob had been found during the search of Defendant's Cadillac; (4) the Jeep was seized from a location three miles from Defendant's wife's residence; (5) Defendant had been accused of stalking his wife in violation of a state court protection order in April and May 2023, although there was no allegation the Jeep was used during these events; (6) Defendant attempted to purchase a firearm on May 14, 2023, while driving the Cadillac; and (7) based upon an FBI agent's training and experience, stalkers or abusers and/or illegal gun purchasers often use rental cars. *See* ECF No. 66 at 5. Defendant argues that there was no probable cause to seize the Jeep because there was no nexus between the Jeep and his alleged stalking of his wife and attempt to purchase the firearm. (ECF No. 66 at 5-6) Thus, Defendant claims that the warrantless seizure of the Jeep and its subsequent search violated the Fourth Amendment. (ECF No. 66 at 6)

Moreover, Defendant asserts that the subsequent warrant issued by the Magistrate Judge does not cure the illegal search and seizure of the Jeep. (ECF No. 66 at 6) Defendant maintains that the facts included in the warrant do not amount to probable cause to support a warrant because

28

nothing linked the Jeep to Defendant's alleged crimes. *Id*. Defendant states that only the FBI's agents "training and experience" points to the Jeep as an instrumentality of a crime. *Id*. Further, Defendant asserts that the "good faith" exception does not save the search and seizure of the Jeep. (ECF No. 66 at 6-7 (citing Leon, 468 U.S. at 923)) Rather, Defendant maintains that the "complete lack of probable cause" and overbreadth of the warrant is so facially deficient that it cannot be saved by the good faith exception.

As to the Cadillac, Defendant admits that the warrant application reveals some connection between the vehicle and Defendant's illegal activity. (ECF No. 66 at 7) Nevertheless, Defendant argues that the warrant is a general warrant, without any "particular description" of the things to be seized, and, therefore, invalid as a matter of law. (ECF No. 66 at 7-8) Defendant asserts that the warrant orders the seizure of the "information regarding anyone and everyone in the vehicle at any time in April or May, the electronic data regarding movement of the vehicle, and other information sought without limitation as to time--all stray far from the particularity requirement of the Fourth Amendment." (ECF No. 66 at 8) Finally, Defendant argues that the *Leon* good faith exception does not save the warrant because "patent defects of the warrant and its accompanying laundry list of items to be seized refute the notion that a reasonable officer would believe it to be valid." (ECF No. 66 at 8)

This Court finds that the warrant to search the Cadillac satisfied the Fourth Amendment's particularity requirement. Indeed, the warrant for the Cadillac was not overbroad as it states the items to be seized must "constitute contraband, fruits, evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 922(a)(6) (false statements related to the sale of a firearm and ammunition), 922(g)(8) (possession of a firearm and ammunition by a prohibited

person), 1001 (false statements), and 2261A (stalking)." Notably, the movement of the Cadillac demonstrates that it was used in the commission of the crime of stalking and, as a result, constitutes an instrumentality of a crime.

In addition, even if the warrant were overbroad, Defendant does not identify the proper breadth for the warrant or what, if anything, should be suppressed as a result. Further, he has not shown any items seized from the Cadillac that did not relate to the crimes outlined in the warrant. As a result, the Court recommends that none of the evidence obtained from the search of the Cadillac be suppressed.

As to the Jeep, the Court finds that there was sufficient probable cause that it contained evidence that "will aid in conviction or apprehension." In her Affidavit to search the Jeep, Agent McKenzie described Defendant's stalking of his estranged wife, his violations of the *ex parte* order of protection against him, and his attempt to purchase a firearm. *See* 4:23-MJ-2036, ¶¶ 4-14. Agent McKenzie's Affidavit connected the charges against Defendant with the Jeep by explaining that the Jeep's key fob was in the Cadillac, Defendant had rented the Jeep during the same temporal period as when he stalked his wife, Defendant's employees saw him driving both vehicles interchangeably, and the Jeep was parked close to Defendant's estranged wife's residence. *Id.*, ¶¶ 20-22. Further, Agent McKenzie detailed that, based upon her training and experience, individuals often utilize rental vehicles to conceal their crimes and evade detection. *Id.*, ¶ 23. Agent McKenzie indicated that the Jeep's telematics and infotainment system could also provide information regarding locations and drivers and passengers of the vehicle. *Id.*, ¶ 27.

Additionally, the Court finds that there was a "substantial basis" to believe there was a "fair probability" that evidence related to the stalking would be found in the Jeep. *See United States v.*

*Saddler*, 19 F.4th 1035, 1039–40 (8th Cir. 2021); *United States v. O'Dell*, 766 F.3d 870, 873 (8th Cir. 2014). To be sure, Agent McKenzie's Affidavit contained information related to the location and use of the Jeep, placing Defendant near his estranged wife's residence during the relevant time. In addition, Agent McKenzie's Affidavit, based upon her training and experience, contended that rental vehicles are often employed to slide under the radar of both law enforcement and their victims. As the case law requires the Court to avoid a hypertechnical reading of an affidavit, the Court finds that there was a substantial basis for granting the warrant for a search of the Jeep. *See United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005); *United States v. Williams,* 10 F.3d 590, 593 (8th Cir.1993).

Finally, even if the Court were to find that the warrants were somehow deficient, the Court finds that they were not so facially deficient such that the *Leon* good faith exception would not apply. As discussed fully herein, Agent McKenzie's Affidavits included factual details regarding a connection between Defendant's crimes and both the Cadillac and the Jeep. Similarly, she provided a link between Defendant's crimes and rental cars, which are commonly used in such activities to evade detection. Moreover, her Affidavits detailed information that law enforcement might be able to gain from the telematics and infotainment systems of the vehicles, in addition to any other evidence in the car. Thus, based upon the totality of the circumstances, the Court finds that the warrant qualifies for the good faith exception under *Leon* because a reasonably trained officer would not have known the search was illegal despite the judge's authorization.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence (Residence) (ECF No. 63), Motion to Suppress Evidence (Autos) (ECF No. 65), and Motion to

Suppress Evidence (Jail Calls, Jail Texts, Etc.) (ECF No. 67) be **DENIED.**

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).


**JOSEPH S. DUEKER**
**UNITED STATES MAGISTRATE JUDGE**

Dated this 3rd day of October, 2025.