UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-cr-274-JMD-JSD-1 |
| | ) | |
| MACE ANTHONY NOSOVITCH, | ) | |
| Defendant. | ) | |

**DEFENDANT'S OBJECTIONS AND REQUEST FOR HEARING REGARDING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

Contents

Facts                                                                                     3

Argument                                                                             3

1.    Erroneous recommendation re motions to suppress post-arrest

       statements and recordings                                             3

2.    Erroneous recommendation re motion to suppress evidence (residence) 10

3.    Erroneous recommendation re motion to suppress evidence (Jeep)    13

4.    Erroneous recommendation re motion to suppress evidence (Cadillac)  16

5.    Motion papers substantially complied with pretrial order             18

6.    *De novo* hearing warranted.                                             19

Conclusion                                                                         20

Table of Authorities

28 U.S.C. §636(b)(1)                                              19
18 U.S.C. §922(a)(6)                                    4, 5, 11, 12
18 U.S.C. §922(a)(8)                                          11, 12
18 U.S.C. §1001                                              11, 12
F.R.Crim.P. 7(c)                                                   5

*Andresen v. Maryland*, 427 U.S. 463 (1976)                                                    12, 17, 18

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971)                                               15

*Dixon v. United States*, 548 U.S. 1 (2006)                                                    6

*Groh v. Ramirez*, 540 U.S. 551 (2004)                                                         12, 13, 16, 17

*Hamling v. United States*, 418 U.S. 87 (1974)                                                 5

*Horton v. California*, 496 U.S. 128 (1990)                                                    15

*Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546 (4th Cir. 2017)    7

*Illinois v. Gates*, 462 U.S. 213 (1983)                                                       11, 14

*Kaupp v. Texas*, 538 U.S. 626 (2003)                                                          7

*Manuel v. City of Joliet*, 580 U.S. 357 (2017)                                                6

*Rehaif v. United States*, 588 U.S. 225 (2019)                                                 6

*Riley v. California*, 573 U.S. 373 (2014)                                                     10

*Russell v. United States*, 369 U.S. 749 (1962)

*Taylor v. Alabama,* 457 U.S. 687 (1982)                                                       7

*United States v. Christie*, 717 F.3d 1156 (10th Cir. 2013)

*United States v. Gayle*, 967 F.2d 483 (11th Cir. 1992)                                        7

*United States v. Hunt,* 372F.3d 1010 (8th Cir. 2004)                                          8, 9

*United States v. Ivey*, 91 F.4th 915 (8th Cir. 2024)                                          11, 12

*United States v. Leon*, 468 U.S. 897 (1984)                                                   13, 16, 18

*United States v. McDowell*, 2025 WL 89723 (N.D. Iowa 2025)                                    20

*United States v. Rodriguez,* 414 F.3d 837 (8th Cir. 2005)                                     14

*United States v. Saddler*, 2020 WL 7130693 (D.S.D. 2020), report and
recommendation adopted as modified,  2020 WL 6255652 (D.S.D. 2020),
aff'd, 19 F.4th 1035 (8th Cir. 2021)                                                           11, 14, 15

*Utah v. Strieff*, 579 U.S. 232 (2016)                                                         7, 9

*United States v. Moua*, 2025 WL 2179313, No. 24-2774 (8th Cir. 8/1/25)                        20

3 W. LaFave, et al., *Criminal Procedure*  (4th ed.)                                           7, 18

Magistrate Judge Dueker has filed a Report and Recommendation ("Report") that recommends that defendant Nosovitch's motions to suppress evidence and statements be denied.  ECF 162.  For the reasons that follow, defendant objects to the Report and requests that this Court conduct its own *de novo* review and reject the Report in its entirety.

Facts

The Magistrate on the whole summarizes the facts underlying the defendant's motions accurately.  The search warrants and applications are found at 4:23 MJ 2036 (Jeep), 4:23 MJ 2095 (electronic devices), 4:23 MJ 3191 (residence), and 4:23 MJ 3197 (Cadillac). However, several facts of record warrant repetition.  First, when Dr. Nosovitch attempted to purchase a firearm on May 14, 2023, it is indisputable that he was not subject to a "qualifying restraining order" as described by federal Form 4473, but only to an *ex parte* order entered without notice or hearing.  R&R ECF 162, pp. 2-3, quoting Form 4473 instructions defining "Qualified Restraining Order." The indictment handed up on May 24 does not allege that Dr. Nosovitch knew, at the time of completing Form 4473, that he was subject to a qualifying restraining order.

Second, while confined after his arrest on the initial indictment, Dr. Nosovitch continued to suffer from communication deficits due to the serious stroke he had suffered prior to May 2023.  The psychiatric reports, including a report requested by the Government, demonstrate that his ability to comprehend and waive his *Miranda* rights was impaired.  *See* ECF 136-1, p. 11; cf. R&R ECF 162, p. 9.

Third, the Jeep described below was seized without a warrant.  R&R ECF 162, pp. 26-27.  The only factual basis for seizing the Jeep was that it was driven by Dr. Nosovitch in May 2023, and the key fob for the Jeep was found in Dr. Nosovitch's other vehicle, the Cadillac, when it was seized without a warrant.  *Id.*

Argument

**1.     Defendant objects to the Magistrate's recommendation regarding suppression of the evidence derived from defendant's incarceration prior to the superseding indictment, as such evidence (consisting of jail recordings, recorded "chirps" or texts, and defendant's statements) were the products of defendant's**

3

**unlawful detention on a facially invalid indictment and ineffective *Miranda* warnings due to defendant's mental state.**

(a) Defective indictment.  Section 922(a)(6) of U.S. Code Title 18 provides in pertinent part that it is unlawful "for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a . . .  licensed dealer, . . . **knowingly to make any false** or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter."  (Emphasis supplied.). The gist of defendant's position regarding the invalidity of the indictment with regard to 18 U.S.C. §922(a)(6) is that the indictment fails entirely to allege that Dr. Nosovitch knew that he was in fact subject to a "qualifying restraining order" when he answered "no" to Question 21j on Form 4473, and that such an allegation was essential to allege an offense of knowingly making a false statement.  The Magistrate's rejection of this argument was erroneous.

In the case at bar, the Magistrate accepted the Government's superficial argument that the indictment was sufficient because it regurgitated the statutory language and the text of Question 21j, without alleging that Dr. Nosovitch knew that he was subject to a qualifying restraining order as defined in Form 4473 itself.  This was a crucial fact that had to be alleged in order for the Government lawfully to charge Dr. Nosovitch with knowingly making a false statement.  Indeed, the pertinent federal regulations governing Form 4473 are pellucid that the notices and definitions set forth in the form are integral to the questions and answers set forth.

As established by the Supreme Court itself in *Russell v. United States*, 369 U.S. 749, at 765 and 768 (1962)(citations omitted, emphasis added):

4

As has been pointed out, the very core of criminality under 2 U.S.C. § 192 is pertinency to the subject under inquiry of the questions which the defendant refused to answer. What the subject actually was, therefore, is central to every prosecution under the statute. **Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.**

**"It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the specifics,—it must descend to particulars.".** . . 'In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; * * *.'  Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged. * * *

\* \* \*

It has long been recognized that there is an important corollary purpose to be served by the requirement that an indictment set out 'the specific offence, coming under the general description,' with which the defendant is charged. This purpose . . . is 'to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had.'

*Russell* was cited with approval in *Hamling v. United States*, 418 U.S. 87 (1974), and its principles are consistent with current F.R.Crim.P. 7(c), but the Magistrate wholly disregarded *Russell*.

Since Defendant's guilt under 922(a)(6) in this case depends entirely on whether he knowingly provided a false answer to Question 21j, it was essential that the indictment allege that he knew he was subject to a qualifying restraining order, not some generic order restraining him from harassing an intimate partner.  In other words, the indictment necessarily had to allege that defendant knowingly answered falsely to Question 21j as explained by the notices, instructions and definitions of the form itself.  The failure to allege the existence of a qualifying order renders the indictment a nullity, and *Russell*, supra,

supports this conclusion despite the Magistrate's assertion that defendant cited no authority for that proposition.  R&R ECF 162, p. 16.

Albeit not directly in point, *United States v. Davies*, 942 F.3d 871 (8th Cir. 2019), affords guidance.  That case involved an appeal of a conviction under 18 U.S.C. §922(g)(1)("felon in possession"), but the issue was whether the Government had proved that the defendant knew he had been convicted of a felony under Iowa law at the time of possession of the firearm, as required by *Rehaif v. United States*, 588 U.S. 225 (2019).  The Eighth Circuit reversed the conviction and remanded for a new trial due to the fact that Iowa law was not so clear that the defendant necessarily knew that he had in fact been convicted of a felony at the relevant time.  The situation in Dr. Nosovitch's case is plainer than that in Davies:  Dr. Nosovitch could not have known that his answer to Question 21j was false, because there was no qualifying restraining order (as defined by Form 4473 itself) in force at the time.  Cf. *Dixon v. United States*, 548 U.S. 1 (2006).  As with *Russell,* the Magistrate ignored the teaching of *Davies.*

In *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017), the Supreme Court expounded:

> . . . pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case. The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. . . .  That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong . . . **If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.**  [Emphasis added.]

A facially invalid indictment clearly is equivalent to any unfounded judicial determination of probable cause--for, as is well established, a grand jury indictment is a determination of probable cause.  If the finding of probable cause by the indictment is invalid--as here, where the original indictment does not and cannot allege essential

elements of the offense--then the pretrial detention of the defendant is invalid. *See Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546 (4th Cir. 2017)(legal process instituted against arrestee, and his resulting pretrial detention, were unsupported by probable cause; continued pretrial detention based on false affidavit contravened Fourth Amendment). The Magistrate failed to appreciate that the defendant's detention prior to the superseding indictment was unlawful, because the indictment was deficient as a finding of probable cause, and it follows that evidence obtained as a result of that illegal detention must be suppressed.

Finally, defendant observes that the Fifth Amendment guarantees that, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . ." It follows that holding a defendant to answer for a felony without a valid indictment is as much a violation of the Fifth Amendment as it is of the Fourth Amendment. *See United States v. Gayle*, 967 F.2d 483, at 485 (11th Cir. 1992) (en banc)(Fifth Amendment violated by indictment if there is no probable cause to support all necessary elements of offense).

(b) Tainted evidence. It is elementary that statements and evidence acquired as the result of an illegal arrest are to be excluded from the evidence, unless intervening circumstances show that the taint of illegality is sufficiently attenuated as to render it immaterial. *See Utah v. Strieff*, 579 U.S. 232, 136 S.Ct. 2056 (2016); *Kaupp v. Texas*, 538 U.S. 626 (2003); *Taylor v. Alabama,* 457 U.S. 687 (1982)(arrest warrant not "intervening circumstance"); *see generally* 3 W. LaFave, *et al.*, *Criminal Procedure* §9.4(a) (4th ed.). The burden is on the Government to demonstrate that otherwise illegally seized evidence is "purged" of its primary taint. *See e.g.*, 3 LaFave, §10.3(b).

The Magistrate concluded that, even if the indictment was fatally defective, and detention under it was unlawful, the evidence harvested during that detention was

7

untainted under the standards outlined in *United States v. Hunt,* 372F.3d 1010, 1012 (8th Cir. 2004), including the Eighth Circuit's conclusion that the exclusionary rule is inapplicable when a new and distinct crime is committed during an arguably illegal detention.

In this case, it is difficult to see how the taint has been purged.  Of course, the evidence at issue came about some time after Dr. Nosovitch was taken into custody, but there is no intervening time between that illegal detention and the seizure of the evidence in question.  Thus, it cannot be denied that the acquisition of the new evidence was a direct result of the primary illegality of the detention.

Nor are there intervening circumstances that dispel the taint.  The Magistrate concluded that the giving of *Miranda* warnings, the jail warnings regarding the recording of telephone calls or messages, and the lapse of time between the Defendant's arrest and the seizure of the recordings are all intervening circumstances, but these circumstances are not truly intervening, independent circumstances entirely unconnected with the illegal detention.  As noted, without the continued detention, there simply would have been no opportunity to seize any evidence.  The evidence obtained during Dr. Nosovitch's incarceration was the direct exploitation of the primary illegality.  Nothing occurred to interrupt that detention or put it on a new course until the superseding indictment was handed up.

The misconduct was flagrant in that the Government procured a facially insufficient indictment and used it to achieve a prolonged illegal detention of the Defendant.  Without that detention, no further evidence of wrongdoing would have been generated.  This kind of official conduct, no less than corrupt or deliberate flouting of the Constitution, is surely much in need of deterrence.  It is not too much to ask that the Government ensure that an indictment is facially sufficient before depriving a citizen of his liberty.

Although the Eighth Circuit has held that the commission of a new and distinct crime during an unlawful detention does not implicate the exclusionary rule under either the Fourth or the Fifth Amendments, *United States v. Hunt*, 372 F.3d at 1012, that flat statement is not the end of the issue here. The Magistrate acknowledged that the allegations of count II of the superseding indictment in this case are inextricably intertwined with the prolonged illegal detention, and, more importantly, with the restraining order that he was charged with lying about. R&R, ECF 162, p. x. The essence of count II is an alleged effort to procure the murder of the same intimate partner who was the subject of the restraining order. Count II does not involve an effort to bribe an officer (as in *Hunt*), to assault an officer or witness involved in the detention, or to commit any other offense unrelated to the detention. Rather, count II is an outgrowth of the allegations of count I and the investigation of defendant's alleged misconduct with respect to his wife, resulting in the restraining order.

It cannot be denied that enforcement of the exclusionary rule in this context carries a substantial cost (assuming the truth of the allegations of count II, which the defendant categorically denies). However, no other remedy will suffice to deter the Government's conduct here or vindicate Dr. Nosovitch's Fourth Amendment rights. The criteria for attenuation as announced in *Utah v. Strieff*, supra, cannot be established. There was no break in custody; the Government's conduct in securing a manifestly insufficient indictment was flagrant in the legal sense; and the jail recordings and messages--and even the alleged statements to fellow prisoners--could not have been obtained but for the unlawful detention. Finally, the basis of count II of the superseding indictment is inextricably intertwined with the investigation giving rise to count I. In sum, the only appropriate remedy to deter prolonged custody on facially invalid charges is to suppress any evidence derived from that illegal custody.

**2.      Defendant objects to the Magistrate's recommendation concerning suppression of evidence derived from the unlawful search of defendant's residence, including the subsequent search of cell phones and laptop computers, because the searches were undertaken pursuant to warrants lacking particularity on their face and cannot be justified by the good faith exception.**

Defendant Nosovitch's federal offense under the original indictment related solely to an attempt to purchase a pistol or pistols. Given the specificity of the offense then at issue, it is evident that the FBI's eagerness to search all things relating to Dr. Nosovitch outran the probable cause that the officers had when they applied for the warrants to search his presumed residence and every electronic device found therein.  Nothing in the lengthy recitals of Dr. Nosovitch's alleged misdeeds in the search warrant applications points to his use of a computer or cell phone in connection with those activities.  The only basis on which the FBI sought to search and seize cell phones and computers and their contents was the "experience and training" of the FBI affiant that caused her to suspect that the electronic devices might contain evidence of crime.  Contrary to the Magistrate's view, R&R ECF 162, p. 24, this speculative opinion is not the desideratum of probable cause under the law.

The command of the Fourth Amendment is simple:  no warrant shall issue except upon probable cause and particularly describing the persons or things to be seized.  The Fourth Amendment's limitations on warrants are especially important in regard to electronic devices such as cell phones and computers.  Indeed, as the Supreme Court has recognized, cell phones are in reality "mini-computers."  *Riley v. California*, 573 U.S. 373 (2014).  As most federal courts have recognized, personal computers and cell phones can and often do hold vast amounts of information touching on many different areas of a person's life.  They may contain or permit access to one's diaries, calendars, files and correspondence--the "very essence of the 'paper and effects' the Fourth Amendment was

10

designed to protect." Thus, "if any place or thing is especially vulnerable to a worrisome exploratory rummaging by the government, it may be our personal computers"--and cell phones. *See United States v. Christie*, 717 F.3d 1156, 1164 (10th Cir. 2013); *see also United States v. Saddler*, 2020 WL 7130693 (D.S.D. 2020), report and recommendation adopted as modified, 2020 WL 6255652 (D.S.D. 2020), aff'd, 19 F.4th 1035 (8th Cir. 2021).

In the case at bar, the FBI's initial warrant application, to search the apartment where Dr. Nosovitch was thought to be residing with his mother, made no mention whatsoever of any offenses other than the alleged violation of 18 U.S.C. §922(a)(6) and §1001 relating to false statements, and the suspicion of violation of §922(g)(8), concerning illegal possession of firearms. 4:23 MJ 3191 application, attachment B to warrant. Further, as noted, nowhere in the application is there any report or other reliable indication that Dr. Nosovitch utilized cell phones or computers in any of his allegedly illegal activities in April or May 2023 (or in any prior alleged misconduct toward intimate partners of yesteryear).

While probable cause is assessed in a common sense, practical way, it is indispensable that the totality of the circumstances presented in the warrant application shows a "fair probability" that evidence of specific crimes will be found in a given place. *See e.g.*, *United States v. Ivey*, 91 F.4th 915, 917 (8th Cir. 2024), citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Although the standard is whether the magistrate had a "substantial basis" for concluding that probable cause existed, that standard permits consideration only of the "four corners" of the warrant application--as the Magistrate recognized. R&R ECF 162, p. 20. It must be shown that there is a nexus between the item to be seized and identified criminal behavior, i.e., probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction. *United States v. Saddler*, supra, 19 F.4th at 1039.

In this case, any nexus between the seized electronic devices and the offenses referred to in the application for the apartment warrant is invisible. Although the subsequent warrant applications to search the devices themselves refer to the federal stalking offense, 18 U.S.C. §2261A, those warrants are likewise deficient in probable cause, since, again, nothing in the affidavit in support of the applications shows any facts supporting the suspicion that Dr. Nosovitch used the devices in connection with the suspected crimes.

Another aspect of the separate applications to search the devices is worth mentioning: the particularity demanded of a valid warrant is missing in the catalog of things (i.e., electronic information) to be seized. The warrants authorize the FBI to engage in a "general, exploratory rummaging" of the contents of the devices. *See Andresen v. Maryland*, 427 U.S. 463 (1976); *see also Groh v. Ramirez*, 540 U.S. 551 (2004). In evaluating the particularity question, the courts "consider the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *Ivey*, supra, at 918.

The catalog of items to be seized from the electronic device searches was quoted in the defendant's memorandum in support of the motion to suppress. *See ECF 63, ECF 64, pp. 4-5, referencing 4:23-MJ-2095.[1]* While there is some effort to connect items to offenses,

---

[1] The following are to be seized from the devices and media listed in Attachment A: Evidence, instrumentalities and contraband concerning violations of Title 18, United States Code, Sections 922(a)(6) (false statements related to the sale of a firearm and ammunition), 922(g)(8) (possession of a firearm and ammunition by a prohibited person), 1001 (false statements) 2261A (stalking), and 2 (aiding and abetting), including:
1. Global Positioning System data, location information, router logs, IP addresses, or any information which reveals the device's historical location,
2. Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.
3. Any and all notes, photos, documents, records, correspondence, in any format and

there is no limitation as to time--the *ex parte* order was not served until February 1, 2023-- no limitation as to identity of persons with whom there were communications, no limitation as to the accounts or other information pertaining to internet service.  In short, the searching agents could view practically anything on any of the devices.

Finally, the search and seizure of the electronic devices cannot be justified by the "good faith" exception of *United States v. Leon*, 468 U.S. 897 (1984).  The facial insufficiency of the warrants, particularly the warrant authorizing seizure of the devices as part of the apartment search, is such that no reasonable officer could believe the warrant was valid. Cf. *Groh v. Ramirez,* supra.

**3.     Defendant objects to the Magistrate's recommendation concerning suppression of evidence derived from the unlawful seizure and search of the Jeep as the Jeep was seized without a warrant and without probable cause, and the subsequent search of the Jeep was tainted by its unlawful seizure, and, further, the subsequent warrant lacked particularity on its face and the search under it cannot be justified by the good faith exception.**

---

medium (including, but not limited to, email messages, chat logs, electronic messages, notes), emails, computer logs, and browser and internet history pertaining to firearms, ammunition, including but not limited to the purchase/sale/trade/exchange of firearms, tactical equipment, targets, sights, etc.
4. Any and all records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider, as well as any and all records relating to the ownership, possession or use of the Devices listed in Attachment A.
5. Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted or in contact with MACE NOSOVITCH by use of: the Devices listed in Attachment A, for the purpose of interstate stalking (or attempt to do so), and/or firearms and/or ammunition purchases (or attempts to do so),
6. Any and all notes, photos, videos, documents, records, correspondence, in any format and medium (including, but not limited to, email messages, chat logs, electronic messages, notes), emails, computer logs, and browser and internet history pertaining to the interstate stalking of the Protected Party and/or the Protected Children.

(a) Illegal seizure.  Whether the seizure is of an automobile or some other property, the touchstone of the legality of the seizure is probable cause, i.e., a "fair probability that contraband or evidence of crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. at 238; *United States v. Rodriguez,* 414 F.3d 837 (8th Cir. 2005).  In the case at bar, federal officers seized the Jeep from defendant's business premises without a warrant based on the following facts:  (1) defendant had rented the Jeep; (2) the defendant drove the Jeep during May 2023;   (3) the key fob for the Jeep had been found during the search of another automobile (the Cadillac Escalade) used and owned by defendant.  The Magistrate (and the Government) also rely on the facts that (4) the location where the Jeep was seized was at least three miles from the residence of defendant's estranged wife;  (5) defendant had been accused of a course of conduct during April and early May 2023 that involved harassment or stalking of his estranged wife in violation of a state court protection order, although absolutely nothing in any prior report had indicated that he had used the Jeep during such incidents; (6) defendant attempted to purchase a pistol on May 14, 2023 (while driving the Cadillac); and (7) based on an FBI agent's training and experience, stalkers or abusers or illegal gun purchasers often use rental cars.  *See* R&R, ECF 162, p. 28.

The sum of these "facts" is exactly zero insofar as probable cause to seize the Jeep is concerned, even in the context of the "automobile exception" to the warrant requirement. The FBI agent's "training and experience" leads not to facts but to opinions, and could be used to justify any seizure of any automobile and any search for any offense.  "There must, of course, be a nexus ... between the item to be seized and criminal behavior.  Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a **particular** apprehension or conviction." *United States v. Saddler*, 19 F.4th 1039 (emphasis added).  In this case, the Government can point to no evidence to show any nexus between the Jeep itself and the alleged misdeeds of Dr.

14

Nosovitch, for the nexus must be to the crimes in question, not just the person.  Thus, the warrantless seizure of the Jeep and its subsequent search were in contravention of the Fourth Amendment.  Compare *Coolidge v. New Hampshire*, 403 U.S. 443 (1971) with *Horton v. California*, 496 U.S. 128 (1990).

(b) Invalidity of subsequent warrant.  The illegality of the search and seizure of the Jeep is not elided by the subsequent warrant granted by the Magistrate.  In the first place, the illegal seizure of the Jeep surely taints the subsequent search, notwithstanding the issuance of the warrant.

But even ignoring the unlawful seizure, the facts summarized above simply do not amount to probable cause to support a warrant.  "When the issuing magistrate relies solely on a supporting affidavit in determining probable cause, as in this case, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  *United States v. Saddler*, 19 F.4th at 1039.  This principle was acknowledged by the Magistrate.  R&R ECR 162, p. 20.  While the Magistrate's determination is entitled to deference, and the supporting affidavit is not to be parsed in a hypertechnical way, but using common sense, *id.,* common sense cannot be stretched to find probable cause where there is none.  Again, nothing in the FBI agent's exhaustive iteration of Dr. Nosovitch's alleged course of harassment ties the Jeep to his alleged crimes.  Still less is there any connection between the Jeep and the attempted purchase of the pistol.  On the contrary, every visual image included in the affidavit shows the Cadillac Escalade.  Nothing but the FBI agent's "training and experience" points to the Jeep as an instrumentality or evidence of any crime under investigation, or as a container of evidence of any such crime.  If "training and experience" were enough, every bit of property owned or possessed by anyone suspected of a crime at any time is automatically

subject to search and seizure if the officer thinks criminals usually or commonly use their property somehow in relation to any crime.

Nor do the "good faith" exceptions enunciated in *United States v. Leon*, 468 U.S. 897, 923 (1984), suffice to save the search and seizure of the Jeep. Here, the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and the warrant is "so facially deficient -- i.e., in failing to particularize the place to be searched or the things to be seized -- that the executing officer cannot reasonably presume it to be valid." *Id.* at 923. The complete lack of probable cause has been demonstrated above. The shocking overbreadth of the warrant is likewise manifest from the face of the application: anything and anybody having any physical connection with the Jeep at any time during May (and the vehicle was not even rented by defendant until May 5), anything, including electronically stored data, concerning any travel, movement or location of the Jeep at any time (not limited to May 2023). Although the application contains a pro forma reference to "contraband, fruits, evidence and instrumentalities concerning" the various offenses of which Dr. Nosovitch was suspected, this boilerplate cannot be construed as appropriately limiting the grossly overbroad scope of the warrant. In substance, the warrant pertaining to the Jeep was nothing more or less than a general warrant, flying in the face of the Fourth Amendment's plain text that a warrant must particularly describe the things to be seized. *See Groh v. Ramirez,* supra.

The Magistrate's Report and Recommendation regarding suppression of evidence from the Jeep must be rejected.

**4.    Defendant objects to the Magistrate's recommendation concerning the suppression of evidence derived from the search of the Cadillac, because the warrant in question was lacking particularity on its face and cannot be justified by the good faith exception.**

The search and seizure of the Cadillac Escalade stand on somewhat different footing than the search and seizure of the Jeep, inasmuch as the warrant application reveals at least some connection between that vehicle and the alleged illegal activity of Dr. Nosovitch. *See* R&R, ECF 162, p. 26. However, it is clear that the warrant was a general warrant and invalid as a matter of law. General warrants are prohibited by the Fourth Amendment, which prevents a general exploratory rummaging in a person's belongings by requiring a "particular description" of the things to be seized. The warrant must not leave what is to be taken to the discretion of the officer. *Andresen v. Maryland*, 427 U.S. 463, 479 (1976).

> The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional. That rule is in keeping with the well-established principle that 'except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.' [*Groh v. Ramirez*, 540 U.S. at 559-60.]

In the case at bar, the warrant authorizing the search of the Cadillac simply fails to meet the particularity requirement of the Fourth Amendment.[2] As noted above with regard to the search of the Jeep, the laundry list of "items to be seized" in the application-- incorporated by reference in the warrant as attachment B, *see* 4:23 MJ 2036--is anything but particular. The information regarding anyone and everyone in the vehicle at any time in April or May, the electronic data regarding movement of the vehicle, and other information sought without limitation as to time--all stray far from the particularity requirement of the Fourth Amendment.

---

[2] The Magistrate criticizes the defense for failing to posit the "proper breadth" for the Cadillac warrant, as though the defense is supposed to rewrite warrants *post hoc* or suffer denial of a motion to suppress. Likewise, as addressed below, the Magistrate insists that the motion to suppress did not sufficiently identify what was supposed to be suppressed. R&R ECR 162, p. 30. The Magistrate's formalism is baffling; defendant moved to suppress "all" evidence seized, including the Jeep fob that was mentioned expressly. If the search was invalid, it is difficult to see how the defense can be more particular than by asserting that "all" evidence derived from the search should be suppressed.

Here, too, the good faith exceptions of *United States v. Leon*, supra, do not suffice to save the search.  As with the Jeep warrant, the patent defects of the warrant and its accompanying laundry list of items to be seized refute the notion that a reasonable officer would believe it to be valid.  *See Andresen v. Maryland,* supra.

Any evidence obtained from the search of the Cadillac Escalade must be suppressed.

**5.      The defendant's motion papers substantially complied with the pretrial order and, given the lack of objection and the Magistrate's proceeding to the merits, this Court likewise should reach the merits.**

The Magistrate opined that defendant's motions to suppress did not comply with the Court's pretrial order.  R&R, ECF 162, pp. 21-22, referencing ECF 16.  The Magistrate also faulted defendant for not presenting a *prima facie* showing of illegality in regard to the residence search, *id.,* p. 21, n. 2.

Of course, the seizure of the Jeep was without a warrant as were the seizures of defendant's phone calls and text messages while in custody.  In those respects, the Government bears the burden of proof.  *See* 3 LaFave, supra, §10.3(b).  In any case, defendant submits that the motions were sufficient in that the motions or their supporting memoranda identified specific items seized from defendant's residence, *i.e.*, cell phones and laptops, identified the Jeep that was seized, specifically referenced the Jeep key fob that was seized in the search of the Cadillac, and adverted to the specific list of items that the officers were searching for under all warrants.  *See, e.g.*, ECF 64, p. 4, quoting the list of items subject to search and seizure in the warrant for the autos.  Indeed, the list of items to be searched for and seized pursuant to the warrants (other than the warrant directed to the

cell phone provider) were quoted verbatim by the Magistrate.  R&R ECF 162, pp. 18 (residence search), 19 (laptop), 27-28 (auto searches). [3]

The motions were directed at any and all items seized, and the Magistrate does not advert to any objection by the Government to the motions on the ground of violation of the pretrial order, as there was none.  *See* ECF 85, 87.  Since the Magistrate proceeded to address all arguments on the merits, and the Government waived any objection to the motions on the basis of the pretrial order, defendant submits that the pretrial order issue is moot.  In any cases, the motion papers were sufficient to put in issue any evidence seized by the Government, and the enforcement of the Magistrate's reading of the pretrial order at this stage would not do substantial justice.

**6.     This Court is authorized to and should conduct its own *de novo* review and hearing of the report as such a plenary hearing would aid the Court's understanding of the issues.**

The standards governing this Court's review of a magistrate's report when objections have been filed is set out in 28 U.S.C. §636(b)(1) as follows:

> Within fourteen days after being served with a copy [of the magistrate's report], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

---

[3] The return on the search warrant for Dr. Nosovitch's residence identified only clothing and laptops as items seized.  As to the seizure of laptops, therefore, the motion papers were quite clear.  See 4:23 MJ 3191, return.  The only item seized from the Cadillac was the Jeep fob.  4:23 MJ 3197, return.  The items seized from the Jeep consisted of tracking information, which was specified in the list of items in the warrant application.  4:23 MJ 2036, application and return.

The judicial gloss on the statute is succinctly summarized in *United States v. McDowell*, 2025 WL 89723 (N.D. Iowa 2025):

> Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion, giving "fresh consideration to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 675 (1980); see also *Salve Regina College v. Russell*, 499 U.S. 225, 228 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable.").

The recent case of *United States v. Moua*, 2025 WL 2179313, No. 24-2774 (8th Cir. 8/1/25), notes the division in the circuits regarding the proper approach to a *de novo* review of magistrate factual determinations and indicated that, under 8th Circuit precedent, the District Court may content itself with reviewing the transcript of the magistrate's hearing or a recording of that hearing.  Slip op. 7.  However, the Eighth Circuit certainly did not forbid a plenary *de novo* hearing.  Here, albeit the motions at issue turn on search warrant applications and undisputed facts regarding defendant's original indictment and incarceration, defendant submits a plenary hearing is warranted and would aid the Court's understanding of the issues.

## Conclusion

For the foregoing reasons, this Court should entertain defendant's objections to the Magistrate's report *de novo,* those objections should be sustained, and this Court should enter its order granting defendant's motions to suppress evidence and statements in their entirety.

Respectfully submitted,

By: */s/ Adam Fein*
Adam Fein, # 52255 MO
*/s/Robert H. Dierker* 23671MO
Attorneys for Defendant
120 S. Central Avenue, Suite
130 Clayton, Missouri 63105
(314) 862-4332

afein@rsfjlaw.com
robertdierker@sbcglobal.net

### CERTIFICATE OF SERVICE

I certify that on November 3, 2025, this document was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Ms. Catherine Hoag and Ms. Jennifer Szczucinski, Assistant United States Attorneys.